205 So.2d 496 (1967)
Joseph D. SAMSON
v.
SOUTHERN BELL TELEPHONE AND TELEGRAPH COMPANY.
No. 7207.
Court of Appeal of Louisiana, First Circuit.
December 19, 1967.
*498 Kent A. Russell, of Fiasconaro, Heisler, Windhorst & DeLaup, New Orleans, DeBlieux & Guidry, Baton Rouge, for appellant.
Victor A. Sachse, of Breazeale, Sachse & Wilson, Baton Rouge, James W. Hammett, New Orleans, for appellee.
Before LANDRY, REID and BAILES, JJ.
LANDRY, Judge.
Plaintiff, Joseph D. Samson, prosecutes this appeal from the judgment of the trial court rejecting (pursuant to defendant's exceptions of no cause of action) plaintiff's demand for workmen's compensation benefits for total permanent disability resulting from stress-caused schizophrenia and also dismissing appellant's alternative claim for damages ex delicto purportedly due by virtue of certain negligent and intentional acts of defendant which assertedly produced appellant's mental derangement. We find the trial court has correctly rejected plaintiff's claim for compensation but improperly dismissed appellant's alternative demand ex delicto.
Inasmuch as the present matter is before us on exceptions of no cause of action, all well pleaded allegations tendered by appellant must be accepted as true. See Elliott v. Dupuy, 242 La. 173, 135 So.2d 54.
As supplemented and amended, plaintiff's pleadings aver essentially the following facts: Plaintiff was employed by defendant as a home telephone installer, a hazardous occupation. In or about 1958, plaintiff was required to attend a special training school consisting of three instruction periods, the first two of which plaintiff successfully completed in 1958 and 1960. In October, 1960, plaintiff was required to attend the final training session which involved orientation on equipment familiarization and was commonly known as "6-A School." This final session is highly competitive and includes, inter alia, an accelerated study program involving intense mental and physical application on the part of those attending. Successful completion of these classes is essential to promotion, consequently all participating employees are subjected to extraordinary stress and strain. While attending the school in October, 1960, plaintiff instantly experienced an extreme excruciating headache accompanied by acute nervousness to such degree he was compelled to withdraw from the course. Upon resigning from the school that day, plaintiff's headache immediately ceased and plaintiff returned to his home in Baton Rouge, Louisiana, that night. The following day plaintiff reported to work with the switchboard installation crew in Baton Rouge but the mental and physical pressure incident to such work caused him to experience severe headaches which persisted throughout that day and each succeeding day on which he was so engaged. Upon reaching home each night, however, plaintiff's headache would cease and did not resume until his arrival at work the following morning.
Plaintiff continued to work under these circumstances for several weeks. However, his condition worsened in that, in addition to headaches, he began to experience pain in his chest, feet and legs to such extent he began to walk with a limp. Each night, however, when plaintiff returned home, all symptoms disappeared only to recommence the next day at work. Commencing May 15, 1961, plaintiff was granted an early annual leave of two weeks duration to seek medical treatment. After obtaining psychiatric aid, plaintiff was advised to return to work June 19, 1961, which plaintiff did. Immediately his symptoms recommenced. On March 1, 1962, plaintiff again left his employment to seek *499 medical care. Commencing March 3, 1962, plaintiff was institutionalized for six weeks and then returned home for further rest. On May 21, 1962, plaintiff resumed work and was assigned the same duties which had caused or contributed to his aforesaid mental decline and resultant disability. After four days at work, plaintiff again collapsed from mental stress and strain. On advice of his psychiatrist, plaintiff resumed work on October 10, 1962, and continued until December 31, 1962, when he sustained another complete mental breakdown. Plaintiff was institutionalized again from February 5, to June 20, 1963, on which latter date defendant requested that plaintiff return to work.
At this time plaintiff's psychiatrist advised defendant to assign plaintiff duties which did not involve mental stress but instead plaintiff was ordered to resume duties even more complex and demanding than installing and repairing switchboards. Because of the physical and mental stress incident to such work, plaintiff sustained a complete mental breakdown the first day he resumed work on switchboards, which said breakdown was the cause of or contributed to plaintiff's disability.
As a result of the aforesaid circumstances, plaintiff has sustained injury diagnosed as schizophrenic reaction of the chronic paranoid type with occasional catatonic episodes which render plaintiff totally and permanently disabled. All of the aforesaid events are meticulously averred to have occurred during the scope and within the course of plaintiff's employment by defendant.
Alternatively, appellant alleges defendant is liable in tort for negligence in (1) compelling plaintiff to perform intricate, confusing and complicated tasks and processes with full knowledge of plaintiff's condition, contrary to express advice of plaintiff's physician communicated to defendant, and (2) other acts of commission and omission contrary to the laws of Louisiana, New York and Georgia, and the dictates of common sense. Plaintiff then alleges his injuries were the result of the negligence alleged.
To plaintiff's main demand for compensation benefits, defendant filed an exception of no cause of action on the ground plaintiff failed to allege disabling personal injury resulting from accidental causes as defined in LSA-R.S. 23:1021. The exception further maintains that plaintiff's allegations show plaintiff is suffering from the effects of a non-compensable disease.
Defendant also resists plaintiff's action ex delicto by means of an exception of no cause of action. In this connection it is urged that since the relationship of employer and employee exists between the parties, plaintiff's sole remedy is under the compensation law and under said law, plaintiff has no right of recovery.
In asserting his claim for compensation appellant contends that when the stress of one's employment is such as to cause a breakdown of any organ or portion of the body resulting in disability, such condition constitutes violence to the physical structure of the body which is tantamount to an accident.
Unfortunately for plaintiff, however, and as contended by counsel for defendant, it is now settled law that nervous or mental breakdown produced solely by stress of one's employment does not constitute an accidental injury within the meaning of the terms as appears in LSA-R.S. 23:1021.
This precise issue was set at rest in Danziger v. Employers Mut. Liability Ins. Co. of Wisconsin, 245 La. 33, 156 So.2d 468, wherein the Supreme Court held that a stroke, suffered by an employee upon learning of the death of a co-employee, did not constitute a compensable accident inasmuch as it did not meet the test set forth in LSA-R.S. 23:1021(7). In interpreting the applicable statute the Supreme Court held the scope of the statute is limited to "traumatic physical hurts, evidence *500 of which must appear in order for the event to be classified as an `accident'". The court further explained that "while compensation for diseases suffered by an employee is recognized as compensable under our law, recovery is limited (save in cases of occupational diseases covered by R.S. 23:1031.1) as provided by paragraph (7) of R.S. 23:1021, to those diseases or infections which `naturally result' from a traumatic physical injury to the body * * *." In addition, the court squarely held compensation is not recoverable for disabling diseases resulting from emotional or psychic trauma upon which Danziger's claim was founded.
The rule enunciated in the Danziger case, supra, was subsequently properly followed and applied by our brothers of the Third Circuit in Johnson v. Hartford Accident and Indemnity Company, La.App., 196 So.2d 635.
Further discussion of the issue would serve no useful purpose. It suffices that the precise issue presented herein has been previously settled adverse to appellant's contentions. See Danziger v. Employers Mut. Liability Ins. Co. of Wisconsin, supra.
In pressing his alternative claim in tort appellant contends it is inconsistent on defendant's part to maintain that plaintiff's exclusive remedy is for compensation, but under the compensation law he has no claim, therefore plaintiff likewise has no redress in tort.
Defendant, however, relies upon the provisions of LSA-R.S. 23:1032, which reads as follows:
"The rights and remedies herein granted to an employee or his dependent on account of a personal injury for which he is entitled to compensation under this Chapter shall be exclusive of all other rights and remedies of such employee, his personal representatives, dependents, or relations.
Nothing in this Chapter shall affect the liability of the employer to a fine or penalty under any other statute."
In this connection defendant argues that since the quoted statute makes compensation the exclusive remedy and since there is no compensation due because the circumstances alleged do not meet the test required in LSA-R.S. 23:1021, plaintiff may not recover compensation and is excluded from any recovery under the general tort law of this state as exemplified in LSA-C.C. Article 2315.
It appears the key phrase contained in LSA-R.S. 23:1032 are the words "for which he is entitled to compensation under this Chapter shall be exclusive of all other rights and remedies of such employee * * *."
In interpreting the provisions of LSA-R.S. 23:1021, the courts have repeatedly held that where the injury is one for which compensation is not due under the workmen's compensation act, the employee may sue his employer in tort upon alleging the injury resulted from the employer's negligence.
The first case so holding was Boyer v. Crescent Paper Box Factory, 143 La. 368, 78 So. 596. In the cited case plaintiff was scalped when her hair became caught in certain machinery as plaintiff was in the dressing room of defendant's factory preparing to return home after her day's work. The court therein held in effect that since the compensation act provided no recovery for injury sustained due to the loss of one's scalp, plaintiff's injury was not covered under the compensation law, consequently plaintiff could sue her employer in tort based on the employer's alleged negligence.
Faulkner v. Milner-Fuller Inc., La.App., 154 So. 507, involved an instance in which an employee sought compensation for disability resulting from a lung infection reputedly caused by inhaling paint fumes. Alternatively, recovery in tort was sought *501 on the ground the employer negligently failed to furnish plaintiff a safe place of employment. Defendant employer excepted to both demands. The question to be resolved was whether plaintiff's injury involved an occupational disease not covered by the compensation act, or an injury within the purview of the statute. Insofar as defendant's exception concerned the compensation claim, the court overruled said defense on the ground that any doubt respecting the claim should be resolved in favor of the employee pursuant to the terms of the compensation statute. As to the alternative demand ex delicto, the court squarely held such claim (advanced pursuant to LSA-C.C. Article 2315) was not excluded by the compensation act if it be ultimately determined plaintiff's disability was not the result of occupational disease.
The next case dealing with the issue presently under discussion is Clark v. Southern Kraft Corporation, La.App., 200 So. 489, which concerned a claim in tort for injury to the employee's feet allegedly resulting from chemicals and acids purportedly allowed to remain in plaintiff's work area due to negligence on the part of defendant-employer. After concluding plaintiff did not state a cause of action under the compensation act because he failed to establish the occurrence of an accident, the court held:
"With this conclusion reached, it must be said that the afore quoted Section 34, which speaks of the exclusive right and remedies of an employee, is not here applicable; for the provisions thereof, as they specifically state, are to be invoked `on account of a personal injury for which he (employee) is entitled to compensation under this act * * *.'
If the claim of plaintiff, therefore, is not within the compensation statute, certainly he may enforce his rights under the general law of torts, as he seeks to do in this action. On this point, the case of Boyer v. Crescent Paper Box Factory, Inc., 143 La. 368, 78 So. 596, seems pertinent."
The point presently at issue appears to have again been considered in Atchison v. May, 201 La. 1003, 10 So.2d 785, which involved a claim by a brother and sister for damages ex delicto because of the death of their brother killed during the course of his employment at defendant's sawmill. It was there contended the exclusive remedy lay under the compensation act and that plaintiffs had no cause of action in tort for recovery of damages for decedent's death. In the cited case the court sustained defendant's exception of no cause of action on the ground the death occurred within the purview of the compensation statute and the exclusive remedy was therefore under said act. In so holding, the court in Atchison v. May, supra, discussed the holdings in Boyer, Faulkner and Clark, supra, and distinguished those authorities in the following language:
"The result in those matters was founded upon the premise that, since it is well established that occupational diseases cannot be considered as `accidents' within the purview of the compensation law, it follows that employees injured in this manner as a result of an employer's negligence, are not deprived of their right of action under Article 2315 of the Civil Code.
The decisions in the Boyer, Faulkner and Clark cases are not in discord with the conclusion we have reached in this matter. The distinction between those cases and this one is obvious. The former are predicated solely on the theory that, since the compensation law does not provide coverage for the particular injuries sustained by the plaintiff and since the contract between the employer and employee covered injuries compensable under the Employers' Liability Act only, the employee did not waive his right to sue under the general law for such injuries. On the other hand, in the instant case, there can be no doubt that the injuries which caused the employee's *502 death were due to an `accident' as defined by the Employers' Liability Act * * *."
Counsel for defendant, however, relies upon the holding in Nugent v. Lee Lumber Company, 4 La.App. 371, and Kenner v. Hanreco, Inc., 161 So.2d 142. Assuming arguendo, the Nugent case holds an employee has no cause of action in tort against his employer, even for an injury not covered by the workmen's compensation act, it is the sole authority so holding. Clearly, such jurisprudence has not been followed in the subsequent Faulkner, Clark and Atchison cases. The Kenner case, supra, relied upon by defendant, is inapplicable to the case at bar. The Kenner case, supra, follows the rule in the Boyer, Faulkner, Clark and Atchison cases in holding that where the injury is one compensable under the workmen's compensation act, the employee's right to recover is exclusively under the applicable statute. Such, however, is not the case in the matter at hand. Here plaintiff has no right to compensation inasmuch as his disability does not fall within the scope of the pertinent statute.
The sole remaining issue, therefore, is whether plaintiff alleges a cause of action under the general tort law.
In essence plaintiff's amended complaint asseverates defendant's liability in tort predicated upon defendant negligently and intentionally requiring plaintiff to perform intricate, complicated and confusing tasks, while fully informed of plaintiff's precarious physical and mental condition. It is further alleged plaintiff imposed such unconscionable requirements in direct contravention of the advice of plaintiff's attending physician notwithstanding defendant's prior knowledge thereof, and that said negligence was the proximate cause of plaintiff's disabling condition.
General tort liability is imposed by LSA-C.C. Article 2315, which in effect provides that every action whatsoever of man which causes injury to another, obliges him by whose fault it occurred to make restitution.
No citation of authority is needed to support the proposition that fault, as envisioned in Article 2315, supra, is synonymous with negligence. It is equally well established that for negligence to give rise to an action ex delicto under Article 2315, supra, it must be a proximate cause of the injury in question.
In a broad sense negligence is defined as breach of a legal duty owed by defendant to the person injured. Prescott v. Central Contracting Co., 162 La. 885, 111 So. 269; Trahan v. Liberty Mutual Insurance Co., La.App., 188 So.2d 435.
Our courts have long since recognized and established the rule obligating an employer to provide his servants with a safe place in which to work. See Faulkner v. Milner-Fuller, Inc., supra.
The basis for the rule is the employer's control of the condition of his premises. Having such control, the employer is charged with the legal duty of making the premises safe in order not to expose the employee to unreasonable, unwarranted, unseen or unknown perils inimical to the employee's physical well being. What constitutes a dangerous condition must obviously be determined in the light of the peculiar facts and circumstances attending each individual case.
The question whether an employer owes his employee the duty of refraining from knowingly and deliberately requiring the employee to work under conditions of stress which might precipitate mental breakdown appears res nova in our jurisprudence. It seems, therefore, we are called upon to decide the issue as a matter of first impression.
We are of the view the duty of legal care owed by an employer to his employees includes not only the obligation of *503 furnishing a safe place in which the employee must work, but also the obligation of refraining from knowingly, intentionally and deliberately requiring the performance of duties, which because of circumstances known to the employer, exposes the employee to the imminent danger of mental breakdown. We reach this conclusion because the employer's control of the type of duties to be performed by his employees is no less than that in which he controls and determines the condition of the working premises. Consequently, we perceive no logical reason why the duty of the employer to refrain from requiring the employee to work under dangerous circumstances inimical to the latter's physical well-being should not also encompass and include the onus of refraining from knowingly requiring the performance of duties which will subject the employee to stress harmful to his mental welfare. In either instance, the injury, hurt or mental deterioration results from conditions within the control of the employer. In each case, therefore, liability of the employer is predicated upon the breach of a legal duty owed his servants. Needless to say, each case must be decided in the light of its own peculiar facts and circumstances, the employee being obligated to establish the essential elements of his particular claim.
Having alleged defendant knowingly compelled the performance of duties imminently dangerous to plaintiff's welfare, contrary to the communicated advice of plaintiff's physician, and which tasks defendant knew or should have known would result in plaintiff's mental deterioration, appellant has stated a cause of action in tort.
Accordingly, the judgment of the trial court dismissing and rejecting plaintiff's demand ex delicto is hereby reversed, annulled and set aside and this cause remanded to the trial court for further proceedings consistent with the views herein expressed.
Costs of this appeal to be paid by defendant Southern Bell Telephone and Telegraph Company.
Affirmed in part, reversed in part and remanded.