308 So.2d 459 (1975)
Charles R. RACHAL, Plaintiff-Appellee,
v.
TENNESSEE GAS PIPELINE COMPANY, Defendant-Appellant, and
Tennessee Life Insurance Company, Defendant-Appellee.
No. 4713.
Court of Appeal of Louisiana, Third Circuit.
February 12, 1975.
Rehearing Denied March 12, 1975.
Writ Refused June 6, 1975.
*460 Stafford, Pitts & Stafford by John L. Pitts, Alexandria, and Lunn, Irion, Switzer, Johnson & Salley by Harry A. Johnson, Jr., Shreveport, for defendants-appellants.
Gahagan & Gahagan by Marvin F. Gahagan, Natchitoches, for plaintiff-appellee.
Before FRUGÉ, DOMENGEAUX and WATSON, JJ.
DOMENGEAUX, Judge.
Plaintiff, alleging that his employment with defendant, Tennessee Gas Pipeline Company, caused him to suffer severe hypertension, nervousness, a hearing loss, headaches, and loss of weight and sleep, filed suit against his employer for maximum benefits under the Workmen's Compensation Law. By supplemental petition he joined as defendant his employer's disability insurance carrier, Tennessee Life Insurance Company, for benefits allegedly due him under a group policy provided by the insurance company. In addition to overruling an exception of prescription filed by plaintiff's employer, the trial court ultimately rendered judgment in favor of plaintiff granting him maximum benefits on his workmen's compensation claim, but denied his disability insurance claim against the defendant insurance company.
Tennessee Gas Pipeline Company has appealed suspensively the judgment awarding
compensation benefits to the plaintiff. The plaintiff has also appealed, devolutively, from the judgment denying him recovery for disability insurance benefits.
We affirm the judgment insofar as it denies plaintiff's claim for disability benefits, but reverse insofar as the judgment grants his workmen's compensation benefits.
Plaintiff was employed by Tennessee Gas Pipeline Company from June 1, 1949, until he was discharged on September 8, 1970. His position throughout these years was that of clerk-typist and field accountant. His work entailed general office work, typing, inventories, handling cash, making disbursements, record keeping, etc. For much of the time during the 21 years that he was employed, plaintiff worked in his employer's Natchitoches, Louisiana, office. He was, however, periodically assigned by the company to follow pipeline construction projects located in other parts of Louisiana, and in Minnesota, Massachusetts, and Mississippi.
During the latter part of August, 1966, while on a construction assignment in Meridian, Mississippi, plaintiff received a long distance telephone call from his superior, Otis Korn, informing Rachal that he was being transferred back to Natchitoches and reclassified to a position below the one held by him at that time. This turn of events, according to plaintiff, caused him much consternation, frustration, and stress, and as a result he sought the services of a physician in Meridian shortly thereafter. The physician allegedly stated that plaintiff was suffering from hypertension or high blood pressure. Notwithstanding plaintiff's discontent over the company's actions in transferring and reclassifying him, he nevertheless acquiesced in the decision and continued in his employment at Natchitoches, and later at other locations outside of Louisiana as he was assigned. Following the August, 1966, episode, plaintiff was seen by numerous doctors, and treated for high blood pressure. In the *461 summer of 1970 plaintiff was seen by Dr. Eleanor M. Worsley, who also treated him for hypertension and suggested to plaintiff that he discontinue working for a while. Plaintiff was granted a sick leave by his employer, during which time Doctor Worsley treated his high blood pressure with various drugs. Eventually his pressure was stabilized within normal limits. In September, 1970, plaintiff was ready to go back to work, but was discharged as aforementioned on September 8th. Although the cause of the discharge is not material herein, plaintiff says that he was released because of his health deficiencies. On the other hand, his employer indicates plaintiff was discharged because of mutual discontent, he with the company, and the company with him.
Since plaintiff's release by the defendant pipeline company, he has performed similar office type work for various employers including another pipeline construction company, and has also worked as an automobile salesman.
The trial judge, relying on the Louisiana Supreme Court decision of Danziger v. Employers Mutual Liability Insurance Company of Wisconsin, 245 La. 33, 156 So.2d 468 (1963) originally rendered judgment against plaintiff on the basis that Rachal's illness was not proven to be the result of an accident related to his employment. Thereafter, the Supreme Court handed down Ferguson v. HDE, Inc., 270 So.2d 867 (La.1972). Pursuant to a new trial granted, and based upon Ferguson, the trial judge reversed himself and awarded maximum compensation benefits to the plaintiff. The trial judge was of the opinion that the physical condition of the plaintiff was materially contributed to by the work load he had with his employer. Although the judge found no particular trauma or accident which could be isolated as resulting in the disability, he found that the plaintiff received his disability during his employment and for this reason found his disability to be compensable under the workmen's compensation statute.

PLAINTIFF'S CLAIM FOR WORKMEN'S COMPENSATION
At the very foundation of our Workmen's Compensation Law is the premise that in order for a party (who is not covered under the occupational disease provision of LSA R.S. 23:1031.1) to recover benefits thereunder, he must receive a personal injury as a result of an accident, arising out of and in the course and scope of his employment. LSA R.S. 23:1031. Ferguson does not eliminate the necessity of showing an "accident" in order to come under the Compensation Act for claims involving venous and arterial "injuries". In Ferguson the High Court, in fact, found a job-connected accidental injury (stroke due from emotional shock).
The medical evidence herein consists of numerous reports by various doctors who examined plaintiff after August, 1966, and the testimony of Doctor Worsley. In substance it is shown that plaintiff suffers from high blood pressure or hypertension, sometimes also called hypertensive vascular disease. At no time, however, did Rachal ever suffer a stroke, heart attack, or similar collapse or breakdown.
High blood pressure is clearly not one of the occupational diseases compensable under LSA R.S. 23:1031.1.
Plaintiff therefore attempts to show an "accidental injury" [LSA R.S. 23:1021(1), (7)] by way of emotional shock or excitement, resulting from the aforementioned alleged August, 1966, telephone call (and resultant arguments with his boss regarding transfer and reclassification) in order to bring his case within the ambit of Ferguson. In this respect plaintiff stated in answer to interrogatories:
"Beginning in August, 1966, my employment caused me to suffer high blood pressure, severe headaches, nervousness, inability to sleep and rest at night, a ringing in my ears and often nausea. I would be sitting at my desk at work and suddenly break out in a cold sweat. I *462 couldn't type well or concentrate. I often suffered chest pains. Under doctor's orders, I began taking constant medication and tranquilizers. Often on the job my head would hurt so badly that my eyes would water. I would also get depressed on the job. Several doctors told me that I had to unwind and loosen up, that I had to get ahold of myself or I would suffer a heart attack. Several times on the job my left arm became so weak that it would take both of my hands and arms to open a desk drawer.
I was getting along fine with my employment until the last week in August, 1966. Suddenly, without any warning and without any cause or reason that I could think of, I was advised by Mr. Otis Korn of Tennessee Gas Pipeline Company, who was Division B superintendent, that I was being transferred to Natchitoches with a change in employment classification. I was given this advice by Mr. Korn in a long distance telephone conversation. He and I had several discussions about this matter over the next several days. In fact, we had arguments about it and this is when all of the above symptoms immediately manifested themselves. The more I thought about the transfer and change in job classification, the worse the above symptoms got. I had to seek immediate medical attention from a doctor in Meridian, Mississippi, who told me that I would have to get control of myself or suffer a heart attack."
The trial judge did not find the plaintiff's disease was "caused" by any particular trauma or accident, but instead concluded that his work load and moving from place to place after 1966, resulted in a continual aggravation of his disease, so much so that he was disabled thereby.
Our jurisprudence supports the principle that workmen's compensation is payable when a job related "accident" aggravates or accelerates a pre-existing condition producing disability. LSA 23:1021, Johnson v. Travelers Ins. Co., 284 So.2d 888 (La.1973). But, as in the case of a newly created condition or injury, an "accident", arising out of and in the course of the employment, must be shown.
From a review of the record, however, we find no persuasive evidence that plaintiff's high blood pressure was any worse in September, 1970, than in August 1966, when it was first allegedly diagnosed. We further opine that even though plaintiff's worry, frustration with his job, work load, and geographical movements with the company during the years between 1966 and 1970, were proven to have kept his blood pressure elevated, nevertheless these conditions did not constitute an "accident" as that term is defined in the statutes and explained in the jurisprudence.
Plaintiff's claim herein therefore must stand or fall upon the proposition that the August, 1966, incident was an accidental injury.
We need not, however, reach a conclusion[1] as to whether the aforementioned occurrence constituted an accident, primarily because the record is devoid of any medical evidence concerning the probability or possibility that hypertension or high blood pressure can be "caused" by emotional shock, excitement, or similiar phenomena. Likewise, there is no medical evidence that plaintiff's condition was caused by the August, 1966, telephone call from his superior notifying him of his transfer and reclassification. Plaintiff only states that, as far as he knew, he never had high blood-pressure before this *463 time. Doctor Worsley testified that plaintiff's tension and anxiety aggravated his high blood pressure, but neither she, nor any of the doctors who submitted reports, indicate that the disease was "caused" or originated by or through his employment.
Thus no causal relationship has been shown between plaintiff's alleged disability and a job related accident and plaintiff has failed to sustain the burden of proof necessary in workmen's compensation cases.
Even assuming arguendo, that plaintiff suffered a work related accident which resulted in his present condition, it is also evident that his claim is prescribed under LSA R.S. 23:1209 which provides as follows:
"In case of personal injury (including death resulting therefrom) all claims for payments shall be forever barred unless within one year after the accident or death the parties have agreed upon the payments to be made under this Chapter or unless within one year after the accident proceedings have been begun as provided in Parts III and IV of this Chapter. Where such payments have been made in any case, the limitation shall not take effect until the expiration of one year from the time of making the last payment. Also, where the injury does not result at the time of, or develop immediately after the accident, the limitation shall not take effect until the expiration of one year from the time the injury develops, but in all such cases the claim for payment shall be forever barred unless the proceedings have been begun within two years from the date of the accident."
Herein the only incident alleged to be the traumatic experience or accident which caused plaintiff's trouble is the aforementioned August 1966 incident. This suit was not filed until amost five years later in August, 1971. Clearly any claims which plaintiff might have had as a result of the 1966 incident are prescribed under the terms of the quoted statute.
We conclude therefore that the trial judge erred in not maintaining the exception of prescription filed by defendant, Tennessee Gas Pipeline Company.

PLAINTIFF'S CLAIM FOR DISABILITY INSURANCE BENEFITS
Plaintiff further claims that he is entitled to disability insurance benefits under the group policy provided by Tennessee Life Insurance Company. The policy provides for weekly indemnity for sickness, under the condition that the claimant is continuously confined to his house and regularly attended by a legally qualified physician. The trial judge held that the plaintiff had not sustained the burden of proving this condition of the policy.
Our Supreme Court has held that literal compliance with a house confinement clause is not necessary, but that substantial confinement is sufficient to meet the requirements of the policy. Manuel v. American Income Life Insurance Company, 254 La. 316, 223 So.2d 817 (1969). The record in this case indicates that with proper medication the plaintiff was able to engage in travel and employment away from his home, subsequent to his discharge by his employer in September of 1970. There is no evidence in the record to support a finding of substantial compliance with the requirements of the house confinement clause in the policy. We therefore affirm the trial court's denial of insurance benefits to the plaintiff.
For the above and foregoing reasons the judgment of the trial court is affirmed insofar as it grants judgment in favor of defendant, Tennessee Life Insurance Company, and against the plaintiff, rejecting his claims for disability benefits; otherwise it is reversed, and it is now ordered that there be judgment in favor of Tennessee Gas Pipeline Company and against plaintiff dismissing his claim for workmen's compensation benefits.
Costs, at trial and on appeal are assessed against plaintiff.
*464 Affirmed in part, reversed in part, and rendered.
FRUGÉ, J., concurs with a short memo of reasons.
FRUGÉ, Judge (concurring).
I concur in the decree but I am of the opinion that the interpretation given to the Workmen's Compensation Act by the Supreme Court in Ferguson may encompass the factual situation presented in this case.
NOTES
[1] Neither do we reach the question of whether plaintiff is presently disabled so as to be unable to return to his former job duties. It is, however, apparent from a review of the medical evidence that plaintiff's blood pressure can and was being controlled by medication, and that after his discharge by his employer, he has been engaged in similar type work.