CHEHARDY, Judge.
Plaintiff has appealed from a judgment dismissing his suit for total and permanent disability benefits and penalties and attorney’s fees against his former employer and its workmen’s compensation insurer.
The issues before this court are whether or not the disability is work-related, and if so, whether or not penalties and attorney’s fees are due.
Plaintiff is disabled as a result of a brain-stem infarct. The stroke manifested itself on September 9, 1980 at plaintiff’s place of employment, Marshall Brothers Lincoln-Mercury, Inc. While standing, speaking with another employee who was seated at a desk, plaintiff suddenly felt dizzy, put his head on the desk and passed out. He was taken to a local hospital where it was determined that he had suffered a cerebral vascular accident (stroke). His condition improved somewhat, but on November 15 he had transient ischemic attacks, a recurrence of his previous stroke, and is now totally disabled.
The trial court found that plaintiff had failed to carry the burden of proof that his disability is work-related and that it was caused by the stressful condition of his employment.
Plaintiff’s occupation is that of a used car salesman. He has worked for various dealerships for many years, moving on where business was best. He had previously worked for Marshall Brothers in 1972. At the other dealerships he was required to work a standard 40-hour week. He attributes his disability to the stress involved in his work, which differed drastically from that at other dealerships.
Plaintiff described his duties as follows: He was required to work from 8 a.m. to 9 p.m., Monday through Friday, and from 8 a.m. to 6 p.m. on Saturday, a 75-hour week. Upon reporting each morning it was his duty along with two other used car salesmen, to move vehicles from a secured position on the back of the lot, where they had placed them at the close of business the previous evening, to a prominent position at the front of the lot. It took about one hour each day. He was also required to see that the cars had sufficient gas and to take them, when necessary, to muffler shops and tire stores, and deliver them to other wholesale dealers who bought cars from his employer. These duties had been performed by porters at the other dealerships where plaintiff worked, and he was able to concentrate on selling cars.
The used ear office was an air-conditioned trailer and most of the automobiles plaintiff demonstrated were air-conditioned, but he was in and out of the office as the work required. On the day of plaintiff’s first attack the temperature was the third highest to have ever been recorded in the City on that date, in what was one of the hottest summers on record.
Plaintiff’s other duties consisted of demonstrating cars for prospective customers, taking them on test drives, calling finance companies and employers to verify employment and secure credit, accompanying the customers to the downtown business area to visit banks and loan companies to secure credit and arrange loans, and dealing with customer complaints after a vehicle had been sold.
Because of the extensive hours plaintiff was required to work it was difficult to arrange for personal medical and dental appointments, and even to get to the bank to take care of necessary personal business. He had been working for Marshall Brothers from 1978 until the accident in 1980.
The central issue is whether the cerebral vascular incident and the disability of which plaintiff complains is job related. This is substantially a factual question and depends to a large extent on the duties of his job and the testimony of the doctors who examined and treated him.
Dr. Richard Palmer, a neurologist, first saw plaintiff at East Jefferson Hospital on September 13, 1980. A history disclosed that plaintiff had been in good health until five days previously when he woke up with a headache. During the day at work on September 9 he lost consciousness and when he awoke he had a weakness and numbness *657 on the left side of his body. He was taken to the hospital emergency room. The weakness persisted and was associated with numbness on the right side of his body. Plaintiff complained of vertigo, nausea, intermittent double vision and a whirling sensation associated with certain head positions. He was hospitalized from September 9 to September 24.
Dr. Palmer performed a thorough neurological examination and a work-up while plaintiff was hospitalized — a CT scan, electroencephalogram, a spinal tap, pattern shift, brainstem auditory evoked potentials, nerve conduction studies, glucose tolerance, blood tests and an angiogram.
Plaintiff had great difficulty maintaining his balance in a sitting position at his initial examination. His right pupil was smaller than the left and clumsiness and loss of coordination in the right arm and a loss of sensation over the right side of his face was noted.
The nerve conduction studies, which measure the function of the peripheral nerve, disclosed a mild slowing, indicating an abnormality, and the glucose tolerance test for diabetes was mildly abnormal. The diabetic condition was not severe enough to require treatment.
On October 28,1980, there was some improvement, but plaintiff’s balance was still quite marked and he continued to complain of double vision. He seemed to be recovering from the stroke.
On November 15, plaintiff was hospitalized because of severe symptoms. The doctor concluded he had a recurrent stroke again. Plaintiff was last seen by this physician on March 12, 1981. (He had been under medical care at the Veterans Administration Hospital because he could no longer afford private medical care.)
Dr. Palmer found continued weakness on the right side and loss of sensation. Plaintiff still had paralysis on the right side of his body and was not released to return to work.
As we understand Dr. Palmer’s testimony on the causal relationship between plaintiff’s occupation and his present disability, he stated, as positively as any medical witness will make any pronouncement, that in his opinion the natural stress associated with plaintiff’s occupation was one factor which accelerated his disability, and that it was very unusual for a person 48 years of age to have a stroke. He concluded the mild diabetes had no relationship to plaintiff’s disability.
Dr. Susan Boston, a neurologist, saw plaintiff on one occasion on March 30,1982, on behalf of defendants. She took his history and performed a neurological examination. She found an abnormal jerking-type movement of plaintiff’s eyes on the gaze to the right and a marked right side weakness in examination of the motor system. Cerebral function was normal on the left side, but impaired on the right, which caused plaintiff to walk with a limp. She concluded plaintiff had a brainstem infarction or stroke, but had no opinion as to the cause.
In reviewing the previous hospital records she thought a predisposing factor would be the presence of diabetes. Other predisposing factors would be cardiac disturbances, elevated cholesterol or lipids in the blood stream or heavy smoking. She would not commit herself on whether or not stress would be a factor that tends to accelerate arteriosclerosis, but stated that stress does not help anything. Stress is an individual thing, and a direct correlation of how much stress is going to cause arteriosclerosis cannot be made. She did state stress is felt to be a factor in accelerating coronary artery disease.
Dr. Terence D’Souza, a neurology resident at Tulane Medical School, saw plaintiff at the Veterans Administration Hospital in April 1981 and at the Veterans Administration Clinic thereafter. Plaintiff had no further strokes but had not improved from his initial deficits which he had on admission. The primary purpose of admission was to prevent a major stroke. A series of tests were performed, the results of which were normal. He returned for a routine followup in October 1981. His medical condition was about the same, but he had a couple of *658 episodes and was still having blackouts; he was given two medications to thin the blood and to prevent excess clotting and narrowing of the arteries.
The doctor diagnosed plaintiff’s condition as cerebral vascular disease with occlusion of minor vessels supplying the brainstem. He classified plaintiff’s condition as early arteriosclerosis. In his opinion the fact that plaintiff had to work 75 hours per week would create stress which may contribute to arteriosclerosis. He did not associate diabetes with plaintiff’s condition because he did not feel plaintiff had true diabetes. While the glucose test was slightly abnormal, it indicated only so-called chemical diabetes. Plaintiff was put on an 1800 calorie diet, not to control diabetes, but to prevent plaintiff from developing true diabetes in the future.
The rupture of an aneurism, cerebral vascular accident, or stroke is an injury by accident within the meaning of the workmen’s compensation statute. Leleux v. Lumbermen's Mutual Insurance Company, 318 So.2d 15 (La.1975); Gorbach v. Prager, Inc., 310 So.2d 604 (La.1975); Gilbert v. Bituminous Casualty Corp., 344 So.2d 86 (La.App. 2d Cir.1977).
In the instant case plaintiff suffered his first stroke on the job. He had been unable to return to work before he suffered a further stroke, and none of the doctors, including the defendants’ doctor, suggest he is able to return to work now.
It is well established, however, that for recovery under the Workmen’s Compensation Act, there must be proof of a causal connection between the employment and the accident. Leleux v. Lumbermen’s Mutual Insurance Company, supra; Prim v. City of Shreveport, 297 So.2d 421 (La.1974); Barnes v. City of New Orleans, 322 So.2d 821 (La.App. 4th Cir.1975).
Although procedural rules are construed liberally in favor of workmen’s compensation claimants, the burden of proof by a preponderance of the evidence is not relaxed. The testimony as a whole must show that more probably than not an employment accident occurred and that it had a causal relationship to the disability. If the testimony leaves the probabilities equally balanced, plaintiff has failed to carry the burden of persuasion. Jordan v. Travelers Insurance Company, 257 La. 995, 245 So.2d 151 (La.1971); Hebert v. Your Food Processing & Warehouse, Inc., 248 La. 197, 177 So.2d 286 (La.1965).
The difficulty of proving causality in cases of this type is not as susceptible of proof as traumatic physical injury. A preexisting condition can produce disability at any time. See Roussel v. Colonial Sugars Company, 318 So.2d 37 (La.1975).
In Parks v. Insurance Co. of North America, 340 So.2d 276 (La.1976), our Supreme Court recognized the health problems traditionally termed diseases (bronchitis, heart disease, stroke or heat stroke) are compen-sable accidents if the workman’s job duties aggravate the pre-existing condition.
Extraordinary physical stress and strain is not essential to the definition of disabling accident. When the performance of the usual and customary duties of a workman cause or contribute to a physical breakdown, the statutory requirement for accidental injury is present. Parks v. Insurance Co. of North America, ibid; Ferguson v. HDE, Inc., 270 So.2d 867 (La.1972); Bertrand v. Coal Operators Casualty Company, 253 La. 1115, 221 So.2d 816 (La.1968).
Before the accident plaintiff exhibited no disabling symptoms, and adequately met the extreme requirement of a 75-hour work week imposed by his employer. Plaintiff’s physicians related stress to his condition, and he is unable to return to work because of his disabling stroke which manifested his disability.
We conclude plaintiff has established the causal connection between' the accident and disability and that he is entitled to the compensation which he seeks.
Under the provisions of R.S. 23:1221(2) plaintiff is entitled to 66%% of wages during the period in which he is permanently and totally disabled (September 9, 1980), *659 subject to the maximum compensation provided by R.S. 23:1202, and subject to a credit for compensation previously paid.
The evidence in the record relative to plaintiff’s income establishes that he worked on the basis of commission on the gross amount of sales. His earnings in 1980 up until the date of his accident (September 9) totaled $20,039.63.
Since plaintiff was paid on a commission basis, his benefits are prescribed by R.S. 23:1021(7), which provides in pertinent part:
“ ‘Wages’ means average weekly wage at the time of the accident. The average weekly wage shall be determined as follows: * * * (d) If the employee is employed on a unit, piecework, commission, or other basis, his gross earnings from the employer for the twenty-six week period immediately preceding the accident divided by the number of days the employee actually worked for the employer during said twenty-six week period and multiplied by four * * (Emphasis ours.)
Since the record is devoid of evidence establishing plaintiff’s gross earnings for the 26-week period under the above article, or the total number of days plaintiff actually worked during that period, we are unable to determine the amount of weekly compensation due. We will therefore remand the matter to the trial court for further evidence, so that it may make that determination.
Penalties and attorney’s fees provided by R.S. 23:1201.2 are not warranted in this case. Whether the vascular incident was causally connected to plaintiff’s employment was a serious factual issue. The purpose of the trial was to resolve the issue. Defendants should not be penalized for availing themselves of this right. McDonald v. Intern. Paper Co., 406 So.2d 582 (La.1981).
Whether work-related mental and/or emotional stress was extraordinary, or any greater than that of everyday life, and whether this stress was a real cause of the employee’s stroke was a serious question that could only be resolved by trial. The defendants’ refusal to pay benefits was not arbitrary, capricious, or without probable cause.
For the reasons assigned the judgment appealed from is reversed, and it is now ordered that there be judgment in favor of plaintiff, Jack B. Cook, and against defendants, Marshall Brothers Lincoln-Mercury, Inc., and Liberty Mutual Insurance Company, for workmen’s compensation benefits of 66%% of wages beginning September 9, 1980, subject to credit for benefits previously paid, and subject to the maximum provided by law, during the period of permanent and total disability, with interest from due date of each payment until paid, together with medical benefits provided by law. The matter is remanded to the trial court for a determination of the weekly sum due plaintiff in accordance with law and the views expressed herein. Penalties and attorney’s fees are denied.
REVERSED AND REMANDED.