455 So.2d 1217 (1984)
James JORDAN, Appellee,
v.
SOUTHERN NATURAL GAS COMPANY and Home Insurance Company, Appellants.
No. 16399-CA.
Court of Appeal of Louisiana, Second Circuit.
August 22, 1984.
*1218 Culpepper, Teat, Caldwell & Avery by Bobby L. Culpepper, Jonesboro, for appellee.
Lunn, Irion, Switzer, Johnson & Salley by Frank M. Walker, Jr., Shreveport, for appellants.
Before HALL, MARVIN and NORRIS, JJ.
NORRIS, Judge.
Southern Natural Gas Company and Home Insurance Company appeal a judgment awarding worker's compensation benefits for total and permanent disability and penalties. The pivotal issue presented by this appeal is whether a claimant who has a disabling mental condition caused by job conditions and more particularly a job transfer comes within the contemplation of the Louisiana Worker's Compensation Act, specifically the provisions of La.R.S. 23:1021(1) and (6).
James Jordan filed a petition for worker's compensation benefits alleging that on March 27, 1981 he was employed by Southern Natural Gas Company when he became disabled. Specifically, he alleged:
That petitioner was required to work under stressful conditions which caused him to experience stomach trouble, chest pains and depression and other related problems.
These symptoms were further alleged to be work-related.
Defendants answered the petition generally denying its allegations. Thereafter, defendants filed an exception of no cause of action claiming that the petition did not state a cause of action because Jordan did not allege that he suffered a "physical injury" as a result of an accident within the contemplation of the Louisiana Worker's Compensation Act and more particularly that he did not show that a particular incident caused him an injury by violence to the physical structure of his body resulting in the alleged psychological disability.
Jordan amended his original petition to reword the above quoted paragraph to read:

*1219 That on or about the 27th day of March, 1981, the petitioner was backfilling ditches, undoing pipes, digging ditches, climbing in and out of ditches, when he accidentaly (sic) injured himself and experienced stomach trouble, chest pains, and depression, and other related problems.
After trial on the merits, in written reasons, the trial court found that Jordan was totally and permanently disabled thereby entitling him to compensation benefits, stating:
* * * However, in this case, the medical testimony (from the first general practitioner who saw him to the last psychiatrist who saw him) agrees that plaintiff has a disabling mental condition that manifested itself in serious physical problems. The only question is whether that condition is job connected.
The Court concludes that plaintiff is (and from March 27, 1981, has been) disabled from performing any type of work. Plaintiff's disability is an emotional or mental one, caused by stress and anxiety he encountered when he began to perform heavy, physical work after having done less physically demanding work for many years. The Court, therefore, feels plaintiff's present disability is job related. [Emphasis added.]
Accordingly, the trial court awarded worker's compensation benefits for total and permanent disability, penalties for arbitrary and capricious refusal to pay benefits, medical expenses, costs, and $5000 attorney's fees.
Our review of the evidence presented at trial reveals the following context facts. Jordan, who had been employed by Southern Natural Gas for 24 years, had been the operator of its dehydration plant in Bienville Parish from 1966 until one week prior to March 21, 1981. One week prior to that date, Jordan was informed by his supervisor that he was being transferred from the dehydration plant to a maintenance gang which worked out of Ruston. Jordan worked at the dehydration plant for the remainder of the week following the notification and took a week's vacation. On March 21, 1981, Jordan reported to work on the maintenance gang which was at the time laying a pipeline in Bienville Parish near the location of Jordan's home. Despite the location of the pipeline under construction, Jordan was required by his employer to drive to Ruston each morning and then ride back with the gang to the job site. During this week, Jordan performed regular maintenance pipeline crew work, e.g., moving skids, shoveling, and connecting, doping and testing pipe. Admittedly, this type of work was of a more physical nature than the duties which he had formerly performed as operator of the dehydration plant.
It is uncontradicted that the fact of his being transferred caused Jordan great emotional stress in that he felt the move was a "demotion." This stress was further heightened by the fact that the company required him to travel to Ruston prior to reporting to the job site which was near his home, his requests to the contrary notwithstanding. According to the testimony of Jordan, on either Wednesday or Thursday of the week in question he experienced cramping in his stomach, pain in his chest, side, leg and left shoulder and some dizziness. Jordan further testified that at some point during the week he was forced to lie across the hood of a truck to rest and reported these symptoms to Larry Penuell. Although Jordan worked from Monday to Friday of that week, he called his superintendent, Billy Taylor, on Saturday informing Taylor of his stomach problems. Jordan has not worked since.
Taylor's testimony is corroborative of Jordan's transfer, his having worked for a week, and his phone call on Saturday with complaints of stomach problems. However, Taylor's testimony is further indicative that Jordan never reported any physical injury which occurred on the job.
Crew leader, Larry Penuell's testimony is to the effect that while Jordan did complain that his stomach was "growling," he did not relate this complaint to any job activity. Penuell had no recollection of any *1220 incident when Jordan had to rest by lying across the hood of a truck.
There is no testimony that Jordan ever complained to any of his co-workers or his employer of his having suffered any injury to his body which was job related. The extent of the testimony of the co-workers of Jordan relating to his difficulties is that there was some general discussion of Jordan's having had stomach problems and a complaint of stomach problems on his last day of work around the lunch break. In fact, a review of this record reveals that prior to the filing of the exception of no cause of action, Jordan did not contend that his alleged disabling condition was a result of any accidental job-related injury or that it was even caused by any physical exertion connected with his work on the maintenance gang.
It is obvious and clear from the extensive medical evidence [based to a great extent on the revelations of Jordan] and the testimony of Jordan himself that the cause of Jordan's disability was the emotional impact of his transfer from the position of operator of the dehydration plant to the maintenance gang.
Dr. John S. Robinson's report states that Jordan talked excessively about his work, was preoccupied with his job and was worried about not only its stresses but also his various hostilities toward certain individuals and his employer. Dr. Robinson's impression was that "Mr. Jordan has a severe psychiatric problem complicated by hypertension and gastritis."
The report of Dr. J.V. Jones opins that the majority of Jordan's problems are psychosomatic and job related in that he was "brought down" from a management position to working on the gang, which transfer or "demotion" was greatly affecting him. It was his impression that Jordan exhibited much anxiety about returning to work and that this anxiety probably caused the abdominal complaints.
Dr. Charles W. Armistead, a psychiatrist and neurologist, was of the opinion that Jordan's transfer to the maintenance gang was an "emotional shock to him", causing him from that time to change and have dizzy spells and stomach cramping. Dr. Armistead's diagnosis was that Jordan had a severe, neuortic, depressive illness.
Dr. Paul Ware, a psychiatrist who also evaluated Jordan, opined that Jordan suffered from a paranoid personality adaptation of a standing duration that existed prior to his complaints at work. This disorder caused him to become overwhelmed when faced with several "stressors" or conflicts. These conflicts were identified as being a property dispute between Jordan's family and his employer and the transfer itself. It was Dr. Ware's conclusion that Jordan's present problems were related to his previously existing psychiatric disease rather than to any overwhelming stresses caused by his work situation.
Dr. Donald K. Gucker, a psychologist, performed psychological testing on Jordan for Dr. Ware. This evaluation reveals that on the date of the evaluation, Jordan was anxious to relate details concerning his transfer but became resistant when Gucker attempted to administer psychological tests stating that he did not feel able to take the tests, he was under much stress and strain, and he was beginning to cramp and experience physical discomfort. However, Dr. Gucker noted "[i]n my extensive experience in doing diagnostic evaluations with chronic pain patients they invariably display external indicators of pain by their body position, movement of muscles, and none of these usual indications of pain were noted in observing this patient." It was further noted that after Jordan talked with his attorney, he "seemed to feel recovered enough to cooperate and take the tests, although under some protests." The results of Dr. Gucker's evaluation were considered by Dr. Ware in arriving at his ultimate conclusions.
Jordan's treating physician was Dr. W.A. McBride, a psychiatrist whom he consulted from June 1, 1981 until the trial. Dr. McBride testified that Jordan complained of feeling depressed relating the transfer itself as the incident that brought about his problems. Dr. McBride testified that soon *1221 after being advised of the transfer Jordan developed cramping in his stomach, and feelings of being depressed, lost value and an inability to cope with life. Jordan's physical complaints as described, were opined to be consistent with the development of psychophysiological manifestations. The long term anxiety caused hypertension and stomach cramps because Jordan could not "stomach" the way he felt that the company had mistreated him. Dr. McBride prescribed physical activity as an important part of Jordan's treatment. However, Jordan's response was that he was afraid of doing an amount of physical work commensurate with his ability because the company would take that as an indication that he could work despite the fact that Dr. McBride had informed him that his problem was psychological rather than physical. It was Dr. McBride's final opinion that Jordan was disabled from substantial gainful employment because he suffered from depression and anxiety, obviously believing this disability to be "job-related" based on Jordan's subjective determination that he had been demoted as a result of the transfer and his resulting loss of self value.
Jordan's testimony is devoid of any injury that he suffered while on the job which resulted in his physical complaints. By deposition, he admits that he had no accident on the job and attributes his condition to the "long tired out hours and straining and stress and blow that I got when all this happened."[1] His trial testimony obviously further admits that the referred to "blow" that brought about his problems was the emotional impact of the transfer coupled with his feelings that he was being mistreated by his employer.
Thus, the record illumes the obvious the emotional shock of the transfer, superimposed upon Jordan's land dispute with his employer and his mother's death, caused him acute anxiety and depression. The anxiety and depression manifested themselves in physical symptoms.
Accordingly, the question, simply stated, becomes whether or not this factual situation falls within the contemplated coverage of the worker's compensation act; that is, did Jordan suffer an "accident" or "injury" within the contemplation of the act, particularly, La.R.S. 23:1021(1) and (6) which provide:
As used in this Chapter, unless the context clearly indicates otherwise, the following terms shall be given the meaning ascribed to them in this section:
(1) "Accident" means an unexpected or unforseen event happening suddenly or violently, with or without human fault and producing at the time objective symptoms of an injury.
(6) "Injury" and "personal injuries" include only injuries by violence to he physical *1222 structure of the body and such disease or infections as naturally result therefrom. These terms shall in no case be construed to include any other form of disease of derangement, however caused or contacted. [Emphasis added.]
Under the provisions of the act, worker's compensation is premised on the traditional concept of "personal injury by accident arising out of and in the course of ... employment." La.R.S. 23:1031. Our research has revealed no case where compensation benefits have been granted to a claimant solely because of a mental disorder caused by job conditions. But see and compare Taquino v. Sears, Roebuck and Co., 438 So.2d 625 (La.App. 4th Cir.1983).
However, mental disabilities have been held to be compensable under the act when certain circumstances are present. See Faucheux v. Hooker Chemical Corp., 440 So.2d 1377 (La.App. 5th Cir.1983) and the cases cited therein. This condition must be proven as in any other disabling injury, by a preponderance of the evidence. Such a condition must not only be shown to exist but also it must be shown that the condition was causally related to a work related accident. Faucheux v. Hooker Chemical Corp., supra; Andrus v. Rimmer and Garrett, Inc., 316 So.2d 433 (La. App. 3d Cir.1975). Therefore, it is clear under the present state of the law that when a plaintiff develops a disabling anxiety syndrome, traumatic neurosis, or other mental disorder as a result of a work related physical injury, he can recover compensation benefits even if he has recovered physically from the injury. The rationale behind such recovery is that nervousness, neurosis, or emotional disturbances, superinduced by the worker having suffered an injury, can be just as devastating to the ability to return to work as physical or anatomical injuries. Faucheux v. Hooker Chemical Corp., supra. However, when a claimant seeks benefits for a neurotic or mental disability such as a traumatic neurosis, the court must proceed with extreme caution and exercise extreme care in view of the nebulous characteristics of such a condition and the possibility of the symptoms being easily feigned. The evidence in cases of this nature should be scrutinized carefully and every precaution taken to protect employers and insurers against unjustified claims because of alleged mental affliction. Andrus v. Rimmer & Garrett, Inc., supra, and cases cited therein.
It is equally clear that injuries which occur on the job because of emotional shock, fright or stress, are considered to come within the ambit of the act and are compensable. Ferguson v. HDE, Inc., 270 So.2d 867 (La.1972). The Ferguson Court resolved a worker's compensation claim which arose when the employee had a stroke after an argument with his employer over the amount of his paycheck in favor of the employee. It was undisputed that the stroke was caused by emotional shock or excitement. In reversing its earlier position in Danziger v. Employers Mutual Liability Insurance Company of Wisconsin, 245 La. 33, 156 So.2d 468 (1963), the court held that the employee had suffered an injury arising out of the course of his employment because he suffered "violence to the physical structure of the body" without which he would not have been paralyzed, the injury was accidental because it was unexpected and unforeseen, it happened suddenly and violently, and it produced at the time objective symptoms of injury. The Ferguson Court found no reason to deny recovery in a case where the injury occurred because of emotional shock, fright or stress. Accordingly, where a worker suffers a heart attack or a stroke caused by extraordinary mental or emotional exertion, as opposed to ordinary physical exertion, he is covered under the worker's compensation act. See McDonald v. International Paper Co., 406 So.2d 582 (La.1981); Lonzo v. Town of Marksville, 430 So.2d 1088 (La.App. 3d Cir.1983); Cook v. Marshall Brothers Lincoln-Mercury, Inc., 427 So.2d 655 (La.App. 5th Cir.1983); Small v. J.C. Penney, Inc., 367 So.2d 1277 (La.App. 3d Cir.1979).
*1223 However, we consider both of these lines of jurisprudence to be factually distinguishable from the instant case where we have a claimant who has suffered no job related physical injury or damage to any physical structure of his body but rather has solely suffered from mental problems caused by job condition and which mental condition has manifested itself in physical symptoms resulting in a disabling condition.
In attempting to resolve the instant issue, we have found cases which are analagous and instructive in arriving at a solution.
The claimant in Rachal v. Tennessee Gas Pipeline Co., 308 So.2d 459 (La.App. 3d Cir.1975), attempted to extend the rationale of Ferguson by attempting to show an "accidental injury" by way of emotional shock or excitement resulting from his job transfer and reclassification. That plaintiff was employed by a pipeline company for 21 years as a clerk-typist and field accountant. Much of his job responsibility involved working in the main office of the company although periodically he was assigned to follow construction projects outside that office. While on a construction assignment, plaintiff received a phone call from his superior informing him that he was being transferred back to the main office and being reclassified to a position below the one held by him at that time. This turn of events caused the plaintiff much consternation, frustration, and stress. His consultation with a physician revealed that he was suffering from hypertension or high blood pressure. Following this transfer, plaintiff remained in the employment of the company and was continually treated by numerous doctors for high blood pressure. It was eventually suggested by his physicians that he discontinue working until his blood pressure could be stabilized. The Rachal Court construed the worker's compensation law to require that a claimant receiving benefits thereunder receive a personal injury as a result of an accident arising out of and in the course and scope of his employment and concluded that Ferguson and its progeny did not eliminate the necessity of showing such an accident in order to fall within the provisions of the act because the Ferguson Court expressly found that the stroke due to emotional shock was the job connected accidental injury. It was the opinion of the court that the plaintiff's worry, frustration with his job, work load and geographical movements with the company were proven to have kept his blood pressure elevated, that these conditions did not constitute an "accident" as that term is defined in the statutes and explained in the jurisprudence.
This court was called upon to determine whether a claimant had suffered an injury or personal injury within the ambit of the compensation act in Franklin v. Complete Auto Transit Co., 397 So.2d 60 (La.App. 2d Cir.1981). In Franklin, the claimant was employed as a truck driver. In 1975 or 1976, his truck collided with an automobile which was driven into his path and the driver of the automobile was killed. Additionally, the driver's child passenger suffered permanent brain damage. In late 1977, in the same area on the same highway, the claimant had to drive his truck off the highway and into a ditch to avoid colliding with another automobile which also drove into his path. It was claimed that as a result of the first accident psychological upset and anxiety were sustained but that plaintiff had managed to continue working. It was further claimed that the 1977 incident triggered, aggravated and intensified the anxiety of the first accident causing the claimant to become extremely depressed, have nightmares, and develop an uncontrollable fear of having another accident. Two psychiatrists opined the claimant to be disabled from driving a truck and related the disability to the fatal accident and the later incident. Therein, we stated:
* * * the crucial issue is whether this claimant suffered an injury or personal injury within the meaning of the law when he fails to mention in his testimony that he was injured by violence to the physical structure of his body in the 1977 incident.

*1224 The employee's cause of action under the workers' compensation law is expressed in § 1031 and § 1221:
"If any employee ... receives personal injury by accident arising out of and in the course and scope of his employment, his employer shall pay..." (§ 1031)
"Compensation shall be paid ... in accordance with the following schedule of payments:
"(1) For injury producing temporary total disability ...
"(2) For injury producing permanent total disability ...
"(3) For injury producing partial disability ..." (§ 1221)
Emphasis supplied.
The terms injury and personal injury have been legislatively defined in § 1021(6):

"Injury and personal injuries include only injuries by violence to the physical structure of the body and such disease or infections as naturally result therefrom. These terms shall in no case be construed to include any other form of disease of derangement, however caused or construed."
Emphasis supplied.
In allowing benefits for psychological disability such as anxiety conversion reactions (neuorsis) following the healing of a physical injury, our courts have effectively followed the legislative definition of § 1021(6). In such cases, the neurosis is a [mental] disease that naturally results from a physical injury. Thus where the claimant does not show that a particular incident caused him an injury by violence to the physical structure of his body, a psychological disability resulting from the incident, however disabling, is not within the statutory meaning of injury-personal injury. We are expressly admonished by the legislature not to construe the definition of injury-personal injury to include any other disease or derangement, however caused or contracted. § 1021 supra. The mental disease or derangement must naturally result from and be causally related to injury by violence to the physical structure of the body, and not from other causes.
Larson observes that while some jurisdictions permit recovery in these "mental-mental cases", as distinguished from "physical-mental" cases, Louisiana is among the substantial minority of states which do not provide for recovery. See Larson, Workmen's Compensation Law, § 42.23 at p. 7-624. Louisiana, of course, recognizes Larson's "physical-mental" distinction and, as we have observed, allows recovery for mental disorder following a physical injury.
Under the circumstances shown, claimant's relief must come from the Legislature and not the courts. * * * [Footnotes omitted.]
Franklin was cited with approval in Sutherland v. Time Saver Stores, Inc., 428 So.2d 972 (La.App. 1st Cir.1983). In Sutherland, the claimant was employed in a Time Saver Convenience Store as a cashier when it was robbed. After the robbery, the perpetrator of the crime led the claimant out of the store by placing his hand or a knife on her neck and ordered her to disrobe. Before she was fully undressed, the police arrived and the attacker fled the scene. Examination by a physician revealed that she had suffered no physical injuries. The appellate court concluded that under the facts of this case, the claimant had suffered no injury within the meaning of the worker's compensation laws, stating:
Though Louisiana is in the minority, it is the law of this state, from which we are not ready to depart, that in order to recover in worker's compensation for a mental disability there must first exist a physical detriment as a causative or contributory factor. In other words, there must exist some objective symptoms of injury, either at the time of the incident or subsequent thereto, which naturally result from violence to the physical structure of the body. Franklin v. Complete Auto Transit Co., 397 So.2d *1225 60 (La.App. 2nd Cir.1981). When the legislature employed the "objective symptoms of injury" terminology in the definitional provisions of the worker's compensation statutes, it envisioned a situation where only observable physical symptoms of injury could result in coverage. Symptoms exclusively within the subjective mindset of the plaintiff will not satisfy the requirements of the statute. When LSA-R.S. 23 § 1021(1) and (6) are read in para materia, one can see that the legislature intended to compensate only those workers who could demonstrate objective evidence of violence to the physical structure of the body. Franklin; see also, Davis v. St. Paul Fire & Marine Insurance Company, 409 So.2d 288 (La.App. 1st Cir.1981), and Larson, Workmen's Compensation Law, § 42.23 at page 7-428 n. 82 (Supp.1982). [Emphasis added.]
Based on the court's interpretation of the current state of the worker's compensation law, it was concluded that the relevant statutes require objective symptoms of injury to the physical structure of the body and that as a matter of current Louisiana compensation law, the defendants were entitled to a summary judgment as a matter of law.
To the contrary, Taquino v. Sears, Roebuck and Co., supra, appears to hold that an alleged emotional injury claim absent any physical injury claim in a worker's compensation may be compensable under the current state of the Louisiana Worker's Compensation law. In Taquino, the appellate court reversed the trial court's granting of an exception of no cause of action based upon the claimant's petition which alleged that he was a salesman for Sears and that he had a mental problem because of being transferred from one store to another, a reduction in commission and base pay and an inordinate amount of pressure from his superiors. While those allegations were found to state a cause of action under Louisiana law, it is interesting that the appellate court found it necessary to remand the case to the district court stating: "plaintiff's bare bones petition is vague and this matter is remanded to allow plaintiff fifteen days to amend his petition to specify, if he can, a factual basis to support his mental disability."
The Taquino court obviously construed the holding of Ferguson to mean that the line of cases precluding recovery for mental breakdowns caused by job stress have also been overruled. See Johnson v. Hartford Accident & Indemnity Co., 196 So.2d 635 (La.App. 3d Cir.1967) and Samson v. Southern Bell Telephone & Telegraph Co., 205 So.2d 496 (La.App. 1st Cir.1967) in which both courts relied expressly on Danziger.
In Johnson, it was specifically held that a total disability resulting from a nervous breakdown and work fatigue but not by a single physical incident or trauma nor by any physical cause except possibly the wearing effects of constant fatigue over a period of many months was not compensable. The claimant was a traveling circulation representative of a daily newspaper whose work included long hours from 2:00 a.m. seven days a week. One morning he suffered a mental breakdown requiring hospitalization. All of the evidence was conclusive that the cause of the breakdown was the demands and pressure of his work together with the fatigue of unbroken work days of long hours and much tension. However, there was no single physical incident or trauma which precipitated the condition nor was their any physical cause contributing to the mental collapse. The court denied benefits.
In Samson, the claimant's demand for total and permanent benefits was based on mental and physical pressure caused by his work resulting in severe headaches and other physical ailments and finally in a complete mental breakdown. His injury was diagnosed as schizophrenic reaction of the chronic paranoid type with occasional catatonic episodes occurring during the course and scope of his employment. The court denied recovery finding the settled law to be that nervous or mental breakdown does not constitute an accidental injury *1226 within the meaning of the terms of the compensation act.
Although the language in Danziger that "emotional strain or upset cannot be the cause of an accident under our workmen's compensation act" was expressly overruled in Ferguson, we do not construe the holding in Ferguson, as the Taquino court did, to mean that the jurisprudential holdings that preclude recovery for mental breakdowns caused by job stress have also been overruled. Both Danziger and Ferguson involved strokes, i.e., injury or violence to a physical structure [organ] of the body, caused by job related stresses. Thus, they are factually distinguishable.
Accordingly, we conclude that under the jurisprudence, if (1) a physical injury on the job leads to disabling mental problems or (2) emotional or mental stress on the job leads to a physical injury to the structure of the body, then the worker is entitled to compensation benefits. However, we have found no support for and do not find that any other type of mental disease or derangement is contemplated to be compensable under the worker's compensation act.
This record is devoid of any evidence which would show that Jordan suffered a physical injury on the job which led to his disabling mental problems. Nor is there any evidence that his emotional or mental stress led to any physical injury or violence to the structure of his body. Rather Jordan's disability is clearly caused by mental problems aggravated by self imposed stress on the job. Unfortunate though the result may be, this type of "derangement" is not compensable under the applicable legislation. Our rationale in Franklin is equally applicable and controlling here, and we adhere to that position.
Accordingly, for the foregoing reasons, the judgment of the trial court was clearly wrong, the judgment is reversed and judgment is rendered in favor of Southern Natural Gas Company and Home Insurance Company and against James Jordan rejecting his demands at his cost.
JUDGMENT REVERSED and RENDERED.
NOTES
[1] Additionally, in answers to interrogatories, Jordan stated: No. 9

I had made a complaint to Larry Pennweld of Ruston Warehouse, Ruston, Louisiana, on Wednesday or Thursday out on job as of cramping in my stomach about three hours before we went into warehouse. I also had a headache and felt weak. I went to get water and leaned upon truck for about 15 minutes. I never did get any response out of Larry except in a few minutes he turned around and said `Jordan help those men hook up that trailer,' which could have been done without my help. We got into warehouse at Ruston and he, Larry, began to tell each man what time for them to return to work the next morning. My time was 5:00 a.m. I asked if I could meet them on the job which would have given me at least one more hour to rest and would not have had to drive to Ruston and catch work truck and come back within one mile of my home. He said no, you be here at 5:00 a.m. That just added more strain to me on top of what had already happened, or which you will know I had been in charge of operating a D.A. plant within 1½ miles of my home for several years for Southern Natural Gas, which I had instructed the hook up of this plant and also one in Logansport, Louisiana. I think that was in the summer of 1980 which they put me in a strain at that time. I can see where they were at me for some time. On Sunday night before I went to the doctor in March 1981, I could tell something was wrong with me again. I was having headaches and stomach cramps and weakness, so I called my supervisor, B.Y. Taylor, of Ruston. He told me to go get a checkup and said to me `James, you better get checkup, for you know as well as I do that they are watching you.' Referring to company officials over him.