606 So.2d 1331 (1992)
Todd A. BERNARD, Plaintiff-Appellee,
v.
O'LEARY BROTHERS SIGNS, INC., et al., Defendants-Appellants.
No. 91-557.
Court of Appeal of Louisiana, Third Circuit.
October 6, 1992.
Darrel D. Ryland, Marksville, for plaintiff/ appellee.
Onebane, Donohoe, Bernard, Torian, Diaz, McNamara & Abell, John W. Penny, Jr., Lafayette, for defendants/appellants.
*1332 Before STOKER, KNOLL, and MARCANTEL[*], JJ.
STOKER, Judge.
Mr. Todd A. Bernard brought this workers' compensation suit against O'Leary Brothers Signs and Awnings, Inc., his employer, and Cigna Insurance Company, O'Leary Brothers' compensation carrier, seeking total and permanent disability benefits. Mr. Bernard alleged that he injured his neck and back on May 17, 1989, during the course and scope of his employment with O'Leary Brothers. The defendants paid workers' compensation benefits to Mr. Bernard for a year following the accident. The defendants terminated these benefits on May 17, 1990, based on the opinions of various physicians who had evaluated Mr. Bernard at the pain center of the Willis-Knighton Medical Center in Shreveport. Mr. Bernard filed suit on June 14, 1990, to have the benefits reinstated.
Following a bench trial, the trial court found that Mr. Bernard did sustain a back injury in a work related accident. However, the court found that Mr. Bernard was not physically disabled as a result of the accident. Instead, the court found Mr. Bernard psychologically temporarily totally disabled. Nevertheless, the judgment ordered the defendants to provide physical and psychological rehabilitation services to Mr. Bernard.
The defendants appeal alleging that the trial court erred in concluding that Mr. Bernard suffered a psychological disability caused by the accident and in ordering the defendants to provide physical rehabilitation services to Mr. Bernard when the trial court found Mr. Bernard to be psychologically disabled and not physically disabled. We clarify and affirm the trial court's judgment.

FACTS
On May 17, 1989, while assisting a co-worker in lifting an awning and placing it on the floor, Mr. Bernard felt pain in his neck and lower back. Following this incident, he began complaining of neck and back pain with numbness in his extremities. Mr. Bernard was seen by a number of physicians including Dr. Donald Hines, Dr. Bryan McCann, Dr. Clifton Shepherd, an orthopedic surgeon, Dr. Luiz Carlos De Araujo, a neurosurgeon, and Dr. Robert Franklin, a physical medicine and rehabilitation specialist.
The record does not reveal that Dr. Hines or Dr. McCann testified at trial or by deposition.[1] Dr. Shepherd testified in deposition that Mr. Bernard did not have anatomic impairment or disability and that no anatomical restrictions were appropriate. Dr. De Araujo was of the opinion that Mr. Bernard did not have any type of neurosurgical disease and felt that Mr. Bernard was able to return to work from a neurosurgical standpoint without any restrictions. Dr. Franklin was the only physician who testified that Mr. Bernard was physically unable to return to his former employment.
At the insistence of the defendants, Mr. Bernard underwent an evaluation at the Willis-Knighton Medical Center in Shreveport. Dr. Phillip Osborne, an expert in occupation medicine, algology (pain study), human biomechanics, and psychological testing, brought in various physicians to put together a complete impairment disability *1333 evaluation on Mr. Bernard. This disability evaluation was performed from February 25, 1990 to March 1, 1990, and involved both physical and psychological phases. Dr. Osborne reviewed the test results for diagnosis.
Among the physicians Dr. Osborne consulted were Dr. Warren Long, a neurosurgeon, Dr. Haynie, an internist, and Dr. Dennie, an orthopedist. The record does not reveal that either Dr. Haynie or Dr. Dennie testified at trial or by deposition. Dr. Osborne's opinion is based on the evaluations of these physicians. Dr. Long testified in deposition that he did not see any neurological problem with Mr. Bernard and that he did not see why Mr. Bernard could not return to work. Dr. Osborne was of the opinion that there was nothing physically wrong with Mr. Bernard despite Mr. Bernard's complaints of neck and back pain and numbness in his extremities. Dr. Osborne concluded that Mr. Bernard was able to return to work from a physical standpoint.
However, Dr. Osborne was of the opinion that Mr. Bernard had a psychological disability. Dr. Osborne had a complete psychological profile done on Mr. Bernard by Dr. Thomas Staats, a psychologist. Dr. Osborne was of the opinion that Mr. Bernard primarily had a personality disorder which rendered him psychologically disabled from returning to work. However, Dr. Osborne stated frequently throughout his deposition that he did not believe the work-related trauma caused Mr. Bernard's psychological disability. He did testify that there was a 15% chance he was wrong in this conclusion.
Dr. Staats was of the opinion that Mr. Bernard had a personality disorder, as well as somatization,[2] general anxiety disorder, and dysthymia or depression. He was of the opinion that the personality disorder was not caused by the trauma, and he stated that it was a "toss up" as to whether the somatization was caused by the trauma. However, he was of the opinion that the anxiety and depression could have been caused by the accident. He was also of the opinion that Mr. Bernard was able to return to work.
Finally, Dr. Michael Parker, a psychiatrist, treated Mr. Bernard at Briarwood Hospital from September 8, 1990 through September 14, 1990 following an episode in which Mr. Bernard had homicidal and suicidal ideation following consumption of alcohol.
*1334 Dr. Parker was of the opinion that Mr. Bernard had an adjustment disorder, which is a milder form of depression, with mixed emotional features independent of personality traits, as well as alcohol abuse. Dr. Parker also testified that Mr. Bernard did not have major depression, and that he had passive dependent traits which did not rise to the level of a personality disorder.
Dr. Parker testified that "in [Mr. Bernard's] mind and from his perception he attributes it all to the loss of his job, loss of financial security for his family, having problems with pain on a chronic basis ... I attribute it to more than that, I also attribute it to the problems with increased drinking... I had some doubts about whether it would have reached the level that it did in his case, the degree of depression, especially the homicidal and suicidal ideation, if he had not been drinking to excess ..." Dr. Parker testified that there seemed to be a significant connection between the alcohol consumption and Mr. Bernard's depressed mood. When questioned as to whether he thought that it was more probable than not that the adjustment disorder with depressed mood was causally related to the accident, which resulted in the loss of the job, loss of financial security, chronic pain, and increased drinking, Dr. Parker testified that the alcohol was a confounding variable such that you could not say how much of the adjustment disorder with depressed mood Mr. Bernard would have had if he had not resorted to drinking as he did.
Dr. Parker was of the opinion that from a psychiatric viewpoint Mr. Bernard could have returned to work upon discharge from Briarwood if he did not consume alcohol; however, he noted that chronic pain was a confounding variable in his evaluation of Mr. Bernard's ability to return to work.

TRIAL COURT REASONS
The trial court gave the following oral reasons for judgment. We quote in relevant part:
"To go on to the issue of psychological disability I'd like to start out by reading from paragraph 235 of Malone and John-son which is considered somewhat of relied upon treatise on Louisiana Worker's Compensation Law and just to simply lay a foundation for the next discussion ..."
The trial court quoted the following from the treatise:
"Disability may not always be purely physical, or even partially physical. Some employees may be unable to return to their employment long after their so-called `physical' problems have been resolved, when other employees might be able to do so. They might be suffering from some form of emotional predisposition to disability, and the employment-related event may have precipitated that otherwise dormant condition into a totally disabling condition. That dormant condition might manifest itself in a physical way, such as continued pain or even deformity without observable organic causes; or the condition might be disabling even without physical consequences."
The trial court continued:
"That is just a premise to enter into this discussion because the testimony is quite interesting on this issue. It was Dr. Osborne's opinion that the trauma did not cause the psychological problems. Sometime later in the deposition maybe around page 150 or so he said probably not. He talked in terms of fifteen per cent of chance that the accident caused these psychological problems and 85 per cent no. But Dr. Osborne did very positively testify that this man is psychologically disabled now. Counsel's memo says and I underlined it, counsel's memo says he felt plaintiff was able to return from both a physical and psychological standpoint. That's not the way I read Dr. Osborne's deposition. On page 90 line 7 he said "If however, I'm doing a pre-employment physical for this boy to go back out there I think he's a danger to himself and other people and I wouldn't pass him on an examination." This is a direct quotation. Now if that's not saying he's psychologically disabled *1335 from returning to work I don't know what it is. Dr. Stats seems to be quite certain that the accident perhaps substantially, if not substantially certain certainly partially caused the stress which lead to this behavioral problem. When he talked about personality disorder he said relatively unaffected by the injury. But when discussing the anxiety and depression he said "so it doesn't surprise me at all that his anxiety and depression could have been reactive to or caused by the industrial accident or the ensuing period of being off." When he talks about being off, he's talking about being off work. Now there was a lot more interrogation after that in an attempt to minimize that statement and I would have been doing the same thing had I been counsel for the defendant. But hehis testimony is rather convincing to me that this accident certainly was a cause of this very severe psychological problem. And I use the word severe is not just mine, the word severe is from one or more of the psychiatrists or psychologists. That leads us to a discussion of burden of proof. I'm going to cite some cases which counsel may make note of at this time that I have carefully read and considered prior to today in anticipating this, having read these depositions. The Louisiana Supreme Court case of Droddy, D-R-O-D-D-Y, vs. Cliff's Drilling, Inc., 471 So.2d 223 involved an injury and later a depression and a disability resulting from that. On page 225 I'm quoting, "The depression serves as an emotional overlay of the physical injury and enhances the pain to the point that the plaintiff is unable to do heavy physical work. The psychiatric evidence indicates that the plaintiff's personality makes him particularly prone to depression." Same case says "a plaintiff's disability will be presumed to have resulted from an employment accident if the plaintiff was in good health before the accident but commencing with the accident the symptoms of the disabling condition appeared manifest themselves continuously afterwards, provided that there is some reasonable possibility of a causal connection between the accident and the disabling condition." Reasonable possibility of a causal connection. Now I'm not saying that I agree with this language, in fact some of what I've read, I really don't agree with. But I just read to you from the Supreme Court. A reasonable possibility of a causal connection, even if you take the fifteen per cent. I would think you would have to say that there's a reasonable possibility. But I'm not going to take that fifteen per cent and I'm not necessarily going to rely upon any one thing. This is a young man whoI've never had a worker's comp case before who had been working for many years, had worked for almost two years for this company satisfactorily, there is not a history there indicating an attempt to fake or to malinger. And in fact the medical witnesses for the defendant talk in terms of not malingering but a psychological problem. And this is from page 101 of Dr. Osborne's deposition, "I don't think he is a faking patient. I think the medical literature right now would call him a symptom-magnifier. He grossly magnifies his symptoms. That is where you get the term exaggerating. I don't think he malingers of it. I think this is a psychological illness of some type." Gentlemen, that's a direct quote from Dr. Osborne who is a witness for the defense. Now Dr. Osborne talked in terms of whether or not the accident caused this or not and he talked in terms of no I don't think it did. Then he talked in terms of a fifteen per cent chance that it did. But nevertheless, Dr. Osborne testified and he was sort of a team captain reviewing all of these tests and all of this information that the man really thinks what he's saying is true. As I said, I'm ruling today that in my opinion, and it might be wrong, in my opinion he is not physically disabled. But I think the evidence is very convincing that there is a psychological disability. And the causal connection I think is *1336 supported by the evidence. Now I'd like to also cite the case of Dominick, D-O-M-I-N-I-C-K, vs. CNA Insurance Company, 497 So.2d 758. On page 761, "it is clear under the present state of the law, that when a plaintiff develops an disabling anxiety syndrone, traumatic neurosis, or other mental disorder as a result of a work related physical injury he can recover compensation benefits even if he has recovered physically from the injury." Again I'm not saying this is what Harold Brouillette thinks the law ought to be, I'm just reading you what the law says. The third case I wish to cite is Hughes vs. Webster Parish Police Jury, 414 So.2d 1353 very similar in many ways. The Court in that case pointed out that Hughes, this is the plaintiff is a person of unusual emotional characteristics. It is true the trial judge found that those characteristics pre-existed the accident however, an employer takes his employee as he finds him. And an employee's disability is compensable when a non-disabling pre-existing condition is activated or precipitated into disabling manifestations as a result of injury. Goes on to say "the record here shows that the injury Hughes suffered would have disabled most workers for only a few weeks, however, because of the plaintiff's peculiar emotional makeup this generally minor physical injury has operated to produce a permanent disability with both physical and emotional causes." There are parts of this ruling that concern me and bother me and that is all of the people, all of the medical experts feel that the man needs to go back to work. This is what he needs to be helped. And our law since 1983 has taken into account situations which I feel such as this. That under the rehabilitation provisions, R.S. 23:1226, rehabilitation could have been undertaken sooner. I think it should have been undertaken sooner but I can understand why it was not because first of all, the accident was being contested. And secondly, there seems to have been a sincere, I think, opinion that this man was faking. And to start a rehabilitation program when they thought somebody was faking and wasn't hurt at all would be somewhat inconsistent. So presumably that's why there has been no undertaking by the insurer to this time to go into the rehabilitation. But I'm going to avail myself of the provisions of R.S. 23:1226 and I imagine counsel is probably familiar with this. And I'm going to order rehabilitation and Ispecifically how I'm going to do that, we'll get to a little later because there are some other issues that I want to talk about. But I'm saying for the moment rehabilitation is going to be ordered. I think it would be a serious error to not seriously encourage and to maybe to a certain extent intimidate this young man into going back to work, that's what maybe that's not a good choice of words, but maybe it is. And the Court has some power to do that through the rehabilitation statute. And of course that's better for both parties, if that is successful. Now, there are some other difficult issues... let me go ahead and finish what the Court is going to rule about the disability and the rehab right now, so we'll have that out of the way. It is the finding of the Court that the plaintiff is still suffering from a temporary total disability at the present time and has been since the cessation of benefits on May 17th, 1990. And it will be the order of this Court that the payments from that date be brought up to date. And I'm going to go ahead and render my ruling on the rehabilitation even though I said I was not going to at this time. Of course the payments will be in the amounts stipulated to the $160.90. But first of all, the defendant is ordered to bring worker's comp up to date. There is a ruling that there is a temporary total disability. And it is further ordered that the defendant provide rehabilitative services under the provisions of R.S. 23:1226 beginning no later than March 1, 1991 and continuing for a period of sixteen weeks. I might point out before I go on *1337 that the Court may go up to twenty-six weeks. I'm aware of that, I'm ordering sixteen weeks back to the decree, or a lesser period if the plaintiff is able to return to gainful employment sooner or any longer period if the defendants herein wish to continue same voluntarily for a longer period with temporary total benefits continuing during the rehabilitation period as is required by R.S. 23:1226(F). If the plaintiff is not returned to employment at the end of the sixteen week period and if the defendants do not wish to continue the rehabilitation voluntarily the matter shall be assigned for further proceedings herein for the Court to evaluate the results of the rehabilitative program and to make such further determinations as may be necessary. This decree is subject to all of the provisions of R.S. 23:1226 whether or not specifically recited herein. And I'm mentioning that because one of the provisions is that if the claimant does not cooperate in this there are certain penalties that are involved. And I'm sure his attorney will explain that to him. Now I might point this out, since the finding of this Court is that the plaintiff's disability is psychological and not physical, it is assumed that the rehabilitation program will be psychological but this is not intended to preclude physical rehabilitation as well. Because this Court is acknowledging that the Court may be in error as to the physical disability. I'm making a finding that there is no physical disability but I might be wrong. And it the rehabilitative program points to physical well then that's what it ought to be. I'm not going to attempt to dictate what the rehabilitative program should be. Insurers and .. are expected to have such programs available to them. And I feel sure that they do in this case....
I was also I considered significant the fact that the young man and of course, he might fooling me too, he might have fooled everybody but I'm convinced that he does want to go to work. I'm just not reallyI don't think that he'sthat this is a fake situation. The history doesn't show that. I think he wants to work. I think he can work but I think he thinks he can't work. And I'm hoping that the psychological rehabilitative program which I'm ordering to be put into effect will do what needs to be done."

OPINION
The defendants contend on appeal that the trial court erred in holding that Mr. Bernard was temporarily totally psychologically disabled and that this disability was caused by the work related accident. The defendants also contend that the trial court erred in ordering the defendants to provide physical rehabilitation when the court found that Mr. Bernard was not physically disabled.

Causation and Disability
Under the law in effect at the time of the accident, the level of proof required to establish temporary total disability was by a preponderance of the evidence. Lloyd v. IMC Fertilizer, Inc., 557 So.2d 1078 (La. App.2d Cir.), writ denied, 561 So.2d 102 (La.1990). Mental disabilities have been held to be compensable under the Workers' Compensation Act when certain circumstances are present. Jordan v. Southern Natural Gas Co., 455 So.2d 1217 (La. App.2d Cir.1984). This condition must be proven, as in any other disabling injury, by a preponderance of the evidence. Such condition must not only be shown to exist but it must be shown that the condition was causally related to a work related accident. Jordan, supra; Andrus v. Rimmer & Garrett, Inc., 316 So.2d 433 (La.App. 3d Cir.1975).[3]
On appellate review, the trial court's findings of work connected disability are *1338 entitled to great weight. They should not be disturbed where there is evidence before the trier of fact, which, upon its reasonable evaluation of credibility, furnishes a reasonable factual basis for the trial court's findings, unless clearly wrong. The reviewing court should not disturb reasonable inferences of fact by the trial court, even though the reviewing court is of the opinion that other evaluations and inferences are as reasonable. Breaux v. National Union Fire Ins. Co., 527 So.2d 1207 (La. App. 3d Cir.1988).
Concerning causation, the testimony as a whole must show that more probably than not an employment accident occurred and that it had a causal relation to the disability. If the testimony leaves the probabilities equally balanced, the plaintiff has failed to carry the burden of persuasion. Likewise, the plaintiff's case must fail if the evidence shows only a possibility of a causative accident or leaves it to speculation or conjecture. Prim v. City of Shreveport, 297 So.2d 421 (La.1974). However, "[o]n the specific issue of the causal connection between the accident and the disability, the claimant may be entitled to the benefit of a presumption in certain cases." Malone and Johnson, 13 Louisiana Civil Law Treatise, Workers' Compensation, § 252 (2d Ed.1980). As noted by the trial court "[a] plaintiff's disability will be presumed to have resulted from an employment accident if the plaintiff was in good health before the accident, but commencing with the accident the symptoms of the disabling condition appear and manifest themselves continuously afterwards, provided that there is some reasonable possibility of a causal connection between the accident and the disabling condition." Droddy v. Cliff's Drilling, Inc., 471 So.2d 223, 225 (La.1985) (emphasis added).
Mr. Bernard testified at trial that he did not have any problems with his neck and back before the accident. He stated that he is now unable to do what he wants to do and that he is hurting. When asked what he believed caused him to go into Briarwood, Mr. Bernard stated "[d]epression and putting up with the pain. I couldn't take the pain ... it kept bothering me ... hurting." Mr. Bernard further testified that he did not have any emotional problems before and had never been treated before for depression. He also stated that he is still experiencing depression and pain. Mr. Bernard's testimony was essentially corroborated by his wife and his father.
The trial court apparently accepted Mr. Bernard's, his wife's, and his father's testimony that Mr. Bernard was in good health prior to the accident and began experiencing pain and depression after the accident which conditions had persisted even to the time of trial. We find no manifest error in the trial court's findings in that respect. Accordingly, we do not find that the trial court erred in finding that Mr. Bernard was entitled to a presumption of causation upon showing a reasonable possibility of a causal connection between the accident and the disabling condition.
Apparently the trial judge found that the evidence showed at least a reasonable possibility of a causal connection, stating that "[Dr. Staats's] testimony is rather convincing to me that this accident certainly was a cause of this very severe psychological problem." While we may not agree that Dr. Staats's testimony is convincing, in that regard, or even that it would be sufficient to meet the preponderance standard, it does support a finding of a reasonable possibility of a causal connection. Dr. Staats testified as follows:
"A ... So the Axis II diagnoses, I think, are relatively unaffected by any injury this patient has received or the consequences of that injury. However, I do believe that his anxiety and depression are.
* * * * * *
"A ... So anxiety and depression are fairly common to individuals who have *1339 prolonged pain or prolonged absence, you know, from normal life functioning. So it doesn't surprise me at all that his anxiety and depression could've been reactive to or caused by the industrial accident or the ensuing period of being off.
* * * * * *
"Q. As far as the anxiety and the depression are concerned, is it my understanding that you're saying that those are items that could possibly have been affected by this incident or definitely were?
"A. Oh, it could've been, Counselor.
* * * * * *
"A. Well, in my opinion, Counselor, I would have to opine that the patient being off and having the financial consequences of being off, et cetera, caused the anxiety and the depression. Whether he had enough of an industrial injury to warrant being off that long to have those natural consequences happen, you're going to have to sort out with the prior of fact. Clearly, if he didn't have an accident, then he wouldn't have been off. So it's mildly contributory in the sense that it gave him something to focus on. But an ordinary person probably would not have ever had been off long enough to develop the anxiety and depression that he came up with.
* * * * * *
"A ... And that the bottom line is is that I do believe he would be more prone to anxiety or depression and that at the most you would be talking about an aggravation situation, if at all.
* * * * * *
"Q. Okay, Doctor I just want to ask you this and then I'm going to move on from this. But, again, going back to the ultimate question, if you will, about medical probability or more probable than not, is it my understanding that your testimony today is that you cannot say either way whether or not it's more probable than not that this accident caused the anxiety or depression but rather that it possibly could've aggravated it, is that accurate?
"A. My opinion would be that aggravationthere would be more evidence for aggravationbuilding a case for aggravation necessarily than causation, but I can't state with certainty.
* * * * * *
"A ... The fact that he's been off that long doesn't surprise me that he's anxious and depressed. I'd be surprised if he wasn't.
"Q. And, of course, I think you stated earlier that depression or anxiety is common following an accident?
"A. That's correct. If you stay off long enough and have your life disrupted."
Additionally, while Dr. Osborne did state unequivocally in his deposition several times that he did not believe the trauma caused Mr. Bernard's psychological disability, he stated: "[Mr. Bernard has] got some real psychological and psychiatric problems that predated that trauma and the trauma is just a focus point. But there is a 15 per cent chance that the trauma may have contributed to it. That's the only open door you have got as far as my standpoint."
Finally, Dr. Parker testified that he attributed Mr. Bernard's adjustment disorder to the loss of his job, loss of financial security for his family, having pain on a chronic basis, and problems with increased drinking. However, Dr. Parker stated that the alcohol was a confounding variable such that you could not say how much of the adjustment disorder with depressed mood Mr. Bernard would have had had he not resorted to drinking as he did.
The trial judge found Dr. Staats's testimony convincing on the issue of the anxiety and depression. Dr. Staats's testimony does show a reasonable possibility of a causal connection between the anxiety and *1340 depression and the accident. Dr. Osborne's testimony concerning the 15 per cent chance of causation as well as Dr. Parker's testimony attributing the adjustment disorder in part to chronic pain lend additional support to the trial court's finding of a reasonable possibility of a causal connection. Additionally, the trial court apparently determined that the defendant did not overcome the presumption of causation. We find no clear error in that determination. Accordingly, we do not find that the trial court erred in finding causation.
As explained in the 13 Louisiana Law Treatise, Worker's Compensation, § 262 (2d Ed.1980);
"... if the claimant was in good health prior to the employment event, and thereafter suffers a disabling condition, there is a presumption of causal connection so long as the expert opinion demonstrates a reasonable possibility of that connection. This is true, of course, even though the expert opinion may be that the employment event merely triggered the disabling condition in a worker who had a predisposition for such a condition; this is nothing other than an application of the general proposition that the employer takes his employee as he finds him, predispositions and all.
In some instances, disabling mental conditions appear to develop rather slowly. As a consequence, the time element in such cases is not necessarily controlling..."
Concerning the issue of psychological disability, the medical testimony is somewhat conflicting. Dr. Osborne was of the opinion that Mr. Bernard was psychologically disabled from returning to work, while Dr. Staats was of the opinion that Mr. Bernard was capable of returning to work. Dr. Parker was of the opinion that Mr. Bernard could have been returned to work from a psychiatric viewpoint upon discharge. However, he noted that chronic pain was a confounding variable in his conclusion on that issue.
Although the testimonial evidence in favor of psychological disability was not formidable, we cannot say that the trial court was clearly wrong in its determinations.

Rehabilitation
The defendants complain that since Mr. Bernard is not physically disabled, physical rehabilitation services are logically not in order. The defendants have not cited any authority for this proposition, and we have found none. LSA-R.S. 23:1226 does not limit the type of rehabilitation that a claimant can receive.
LSA-R.S. 23:1226 provides in part:
"A. When an employee has suffered an injury covered by this Chapter which precludes the employee from earning wages equal to wages earned prior to the injury, the employee shall be entitled to prompt rehabilitation services.
"B. (1) The goal of rehabilitation services is to return a disabled worker to work, with a minimum of retraining, as soon as possible after an injury occurs."
We find no error in the trial court's ruling concerning rehabilitation services. We concede that the language of the formal judgment seems overly broad in ordering physical and psychological rehabilitation in one breath. However, the trial judge's reasons for judgment make it clear, we think, that physical rehabilitation in this instance would not be required unless and until rehabilitation experts found some reason or justification for it after further psychological evaluation or as an adjunct to psychological rehabilitation.

DISPOSITION
For the foregoing reasons, the judgment of the trial court is affirmed. Costs are assessed against the defendants.
AFFIRMED.
NOTES
[*] Honorable Bernard N. Marcantel participated in this decision by appointment of the Louisiana State Supreme Court as Judge Pro Tempore.
[1] While the record does not contain testimony by Drs. Hines and McCann, the record does reveal that Mr. Bernard testified that Dr. Hines was the company doctor and that Mr. Bernard saw him approximately three times after the accident. Additionally, the record contains a narrative report from Dr. McCann to Mr. Bernard's attorney, dated October 11, 1990, in which Dr. McCann diagnosed Mr. Bernard as having "Muscle and Ligament in the Neck and Back", post trauma headaches, herniated disc in the C5-C6 area and chronic gratritis. Dr. McCann was of the opinion that an unrelated accident that occurred on June 21, 1990 aggravated these problems. In any event, Mr. Bernard did not appeal the trial court's finding that there was no physical disability.
[2] Dr. Staats gave the following definition of somatization:

"Q. And from the results on the Wahler Inventory, you mentioned the indication of a psychosomatic disorder or some form of somatoform disorder?
A. Somatoform means that there's very little physical basis for grossly distorted and mostly psychological focus of the patient and a form of exaggeration of response to symptoms or even perceived symptoms that don't physically exist. That's what all the group of somatoform disorders are about.
Q. And I take it psychosomatic disorder is one of the somatoform disorders?
A. Well, no, but it is a form of where there is actually a physical and emotional cause for disorder but there are changes in the physionomy, such as an ulcer. You're under a lot of stress, you're worried a lot, so you get an ulcer. That's psychosomatic. The ulcer crater clearly is a physical finding. And somatoform disorders findings are either absent or equivocal.
Q. And I guess we're getting ahead of ourselves again, but did you, in the end, delineate or determine which form of somatoform disorder he had?
A. In the end, I believe that he has a somatization disorder.
Q. Which is exactly what, for the judge?
A. A somatization disorder means that if a patient who complains of fourteen or more symptoms over a period of time, that they are greatly focused on those symptoms and that at least a major portion of those symptoms are not medically verifiable. While some of them can be, the majority of them or the intense focus on them or distress from them, you know, far outweighs the medically verifiable impact that it should have on the patient.
Q. In layman's terms, would I be correct in saying that a somatization disorder or somatization is the unconscious conversion of anxiety, or some other type of stress, into a physical symptom?
A. That is correct. Or the perceiving of a physical symptom, even if one can't be medically verified."
[3] Now LSA-R.S. 23:1021(7)(c) provides:

"(c) Mental injury caused by physical injury. A mental injury or illness caused by a physical injury to the employee's body shall not be considered a personal injury by accident arising out of and in the course of employment and is not compensable pursuant to this Chapter unless it is demonstrated by clear and convincing evidence."
Amended by Acts 1989, No. 454 § 1, eff. Jan. 1, 1990.