NORRIS, Judge.
The plaintiff, Carol Hawthorne, slipped and fell at her place of work, the former Dillard’s Department Store in Shreveport. Dillard’s, a self-insured employer, discontinued workers compensation weekly benefits and medicals after a short period of time; contending she was still unable to work, Ms. Hawthorne lodged the instant claim with the Office of Workers Compensation. The hearing officer found that she was temporarily, totally disabled for 15 days but able to resume her prior work after that; judgment was rendered accordingly. Ms. Hawthorne now appeals, urging she is still unable to work and in need of medical treatment. For the reasons expressed, we affirm.

Facts

Ms. Hawthorne (subsequently remarried as Mrs. Clower) went to work for Dillard’s in December 1990. She started in the accessories department, working part-time for $5.00 an hour, but by February 1991 was being trained for a job in the shoe department, which would give her more hours. Although the precise date of the accident is unclear from the record, the hearing officer found that on February 18 Ms. Hawthorne slipped and fell, landing on her left hip. There were no witnesses; Ms. Hawthorne testified the accident occurred near the break room, where either some water overflowed from a toilet or someone was mopping. She reported the mishap to the personnel manager, Ms. Jones, and then went home. She further testified that after seeing her family doctor, she returned to the store the next day and worked about four hours, but had to leave because of pain and has not worked since.
Ms. Hawthorne first saw her family doctor, Dr. Russell Roberts, on February 25, complaining of a hurt left hip and left and *595 right arms. Dr. Roberts diagnosed a minor abrasion of the left forearm and a contusion of the left hip area; he felt she could continue her work at Dillard’s with the minor precaution of wearing no high heels and bearing no extra weight. She phoned Dr. Roberts the next morning, complaining of soreness in her left rib cage and lower back. She went to his office that afternoon, complaining of burning pain in her lower back; however, her neurological and physical exams were completely normal, leading Dr. Roberts to think she could work but was not willing to. Strictly on the basis of her complaints he advised her to stay off work a few days. On March 6 she had her next office visit, and reported she was doing much better overall, but having charleyhorse pain in her hip if she stood a while or sat too long. An exam of her back and legs was completely normal, and Dr. Roberts felt she could return to work at that time. Two days later she paid him another visit, saying she could not do the work assigned; Dr. Roberts phoned a supervisor at Dillard’s and released her for 10 days of light-duty work. However, on March 11 she complained that four hours’ work had hurt her too much; she had numbness in her left foot, occasional pain in her left hip and groin, and constant pain in her lower back. Dr. Roberts’s partner, Dr. Nash, gave her a sample bottle of Lortab Plus, a fairly strong narcotic painkiller. The next day, March 12, Ms. Hawthorne obtained a referral to an orthopedist, Dr. James Etheredge.
She saw Dr. Etheredge once, March 14, complaining of pain radiating from her back and down her left leg, sometimes reaching her three outer toes. Dr. Ether-edge found slight lumbar scoliosis, due to muscle tension, and moderate decrease of motion and tenderness, but he could find no neurological defects, and the X-rays were normal. He found nothing to explain the radiating pain, and could only diagnose, assuming her complaints were real, that she probably sprained her back or a disc. He could not rule out a psychogenic cause of the pain, and felt it “highly likely” that she could resume her work at Dillard’s. He did not think an MRI or CT scan was needed but, on the basis of her complaints, suggested that she take some physical-therapy. She did so, having several sessions with Mr. Douglas Peak at Tietjen Physical Therapy. On March 22, Dr. Eth-eredge’s office scheduled Mrs. Hawthorne for an MRI and CT scan; the doctor did not recall ordering these tests, and never said they were necessary; he felt that Ms. Hawthorne must have requested them.
Meanwhile, Dillard’s self-insurance administrator, Executive Risk Consultants (“ERC”), was investigating the claim. ERC learned that Ms. Hawthorne had lodged a workers comp claim against a prior employer in August 1988, after only about two months on the job, and settled the case in September 1989, but she did not disclose this on her job application at Dillard’s. ERC’s agent, Cathy Bates, testified that she phoned Ms. Hawthorne to ask her about these events, and she denied them. Ms. Hawthorne testified that she did not deny the facts, but actually told Ms. Bates she could not discuss the matter at the time because her small children were sick and fretting. However, Ms. Bates had recorded the phone call and played the tape at trial; the tape supports Ms. Bates’s version of the conversation. Ms. Hawthorne even denied she had worked for the previous employer. Ms. Bates also obtained medical reports from Drs. Roberts and Etheredge, showing no significant injury. She therefore told Ms. Hawthorne that her claim was denied, and notified Dr. Etheredge’s office that the MRI and CT scan would not be covered. Ms. Hawthorne was positive that Ms. Bates had also fired her, but Ms. Bates had no authority to do so and the personnel manager, Ms. Jones, testified that Ms. Hawthorne was still on the books on medical leave.
About a week after the canceled MRI and CT scan, Ms. Hawthorne called Dr. Etheredge again, asking for Yistaril, a tranquilizer, and Lorcet Plus, a “fairly stout” narcotic painkiller. Etheredge Dep., 12. The doctor said this raised a “red flag” to him as this medicine is “more than just for aches and pains.” He did not give *596 the prescriptions (although Dr. Roberts did give her Vistaril about a month later).
ERC apparently continued to investigate, reviewing Ms. Hawthorne’s extensive hospital records. These showed a stay at Willis-Knighton South in October 1988 for an overdose of Xanax, a tranquilizer; and another stay in June 1989, in which a doctor placed her on a “withdrawal type program,” until he found she was taking Xa-nax “without prescription” and she left the hospital without completing the program. There was also a report from a psychologist, Dr. Tom Ray, in which she admitted (and later denied) she was a drug addict; and a notation from HCA Highland Hospital in November 1989 that her boyfriend or husband said she was addicted to Xanax. At trial she denied she ever had any drug addiction problem. R. p. 67. In fact, she testified, she is allergic to narcotics, a point noted in various hospital records. However, she told a doctor at Willis-Knighton South in June 1989 that “nothing helps her [pain] other than narcotics,” she was given demerol rather often, and she phoned Dr. Etheredge on March 28, 1991, requesting Lorcet Plus, a “fairly stout” narcotic; she did not explain her use of drugs to which she claims to be allergic.
Ms. Hawthorne also reluctantly admitted that since the accident at Dillard’s, she has been doing light bookkeeping for her husband's company, Quality Floor Services. She testified that although she does this (she refused to call it “working for the business”), she makes no wages for it. Her husband, David Clower, verified that she did his bookkeeping, and added that she provided similar services for another relative at an auto repair shop.

Action of the hearing officer

The hearing officer found that Ms. Hawthorne sustained a compensable injury when she slipped and fell on February 18, 1991, but was able to return to her previous employment by March 6, 1991, a total of 15 days. By amended judgment she ordered Dillard’s to pay weekly benefits for this period, subject to the one-week waiting period, La.R.S. 23:1224, and to credit for benefits already paid, La.R.S. 23:1223; and medical expenses through March 6. The hearing officer also assessed statutory penalties of 12%, but since the employer has neither appealed nor answered the appeal, the propriety of the penalties is not before us. La.C.C.P. art. 2133. Ms. Hawthorne appeals, urging the hearing officer erred in finding she was capable of returning to work and in fixing a termination date while she was still under treatment.

Discussion

In a workers compensation proceeding, the claimant bears the burden of proving by a preponderance of the evidence that a job-related accident resulted in disability. Walton v. Normandy Village Homes Ass’n Inc., 475 So.2d 320 (La.1985). Even though compensation claims are now tried before hearing officers, La.R.S. 23:1310.3A(4), the officers’ findings are tantamount to district court findings under the old scheme and are subject to the same standard of appellate review. Key v. Insurance Co. of N. Amer., 605 So.2d 675 (La.App. 2d Cir.1992), and discussion therein. Under this standard, the appellate court may not set aside the hearing officer’s findings in the absence of manifest error. Arceneaux v. Domingue, 365 So.2d 1330 (La.1979). When there is a conflict in the evidence, a reasonable inference of fact should not be disturbed on review. Canter v. Koehring Co., 283 So.2d 716 (La.1973). Where documents or objective evidence so contradict the witness’s story, or the story itself is so internally inconsistent or implausible on its face that a reasonable factfin-der would discredit it, the court of appeal may well find manifest error in a finding purportedly based on a credibility call; but where such factors are not present, and the factfinder’s finding is based on its decision to credit one of two or more witnesses, that finding can virtually never be manifestly erroneous. Rosell v. Esco, 549 So.2d 840 (La.1989).
On appeal Ms. Hawthorne relies mainly on a piece of documentary evidence, a letter report from her physical therapist. She contends the hearing officer over *597 looked this report which is crucial because it contradicts the assessments of her treating physicians and supports her claims of continued disability. It is true that the hearing officer did not mention this report in her memorandum opinion.
The letter report, dated March 19, describes Mr. Peak’s physical exam of Ms. Hawthorne in great detail. It mostly summarizes her subjective complaints, such as lumbosacral pain (which increased after “repeated left sidegliding”), localized anter-iolateral ankle pain, and difficulty lying prone with a level pelvis. Mr. Peak suggested manual therapy and home exercises but indicated they would not be needed for “very long.” These symptoms are essentially the same as those reported to Dr. Roberts on March 6 and Dr. Etheredge on March 14, but neither of the doctors considered them serious enough to keep her from working. While both physicians consented to let her stay off work a short while, they were obviously making a concession to her subjective complaints, and not responding to medical findings. Roberts Dep., 11; Etheredge Dep., 9. Notably, Dr. Roberts thought she was able but not willing to work, and Dr. Etheredge was so skeptical of her continued complaints as to suggest that the pain might be psychogenic. Roberts Dep., 10; Etheredge Dep., 10. On these facts, the hearing officer was not plainly wrong to accept the opinions of the treating physicians, adopt Dr. Roberts’s release date of March 6, and reject the report of the physical therapist.
The hearing officer also based her opinion on an explicit rejection of Ms. Hawthorne’s testimony as to her physical condition. We will not restate the numerous inconsistencies already outlined above. Needless to say, contradictions in Ms. Hawthorne’s accounts of her medical and employment history cast considerable doubt on her description of her current physical condition. The hearing officer was very unfavorably impressed with the claimant’s truthfulness, and chose to disbelieve her complaints of ongoing, disabling pain. This decision was easily within the hearing officer’s discretion and we will not disturb it.

Conclusion

For the reasons expressed, the hearing officer’s amended memorandum opinion and judgment is affirmed. Costs are assessed to the appellant, Carol Hawthorne (Clower), in accord with La.C.C.P. art. 5188.
AFFIRMED.