JjWOODARD, Judge.
This is an appeal from a judgment denying plaintiffs claim for workers’ compensation benefits. Plaintiff, Ezra L. Wiley, was employed by defendant, Tullos Construction Company, as a lineman. The parties stipulated that plaintiff was injured in a work related accident on January 23,1989. Defendant paid workers’ compensation benefits through May 8, 1990. On October 25, 1990, benefits were reinstated and paid until February 7, 1991. At issue is whether plaintiff was disabled, and thus entitled to benefits, from May 8, 1990 through October 25, 1990, and from February 7, 1991 to the present.
FACTS
Plaintiff was injured while attempting to load a 4' x 8' piece of plywood onto a truck. He immediately felt a burning sensation between his shoulders and sought medical attention from his family physician, Dr. William Coney, the next day. Dr. Coney referred plaintiff to Dr. L. Donovan Perdue for an orthopedic evaluation on February 15, 1989. Plaintiff told Dr. Perdue he was experiencing pain across the back of his neck and between his shoulder blades hand that he had some numbness in his hands at night. Dr. Perdue diagnosed an acute cervical sprain and recommended conservative treatment.
Dr. Perdue saw plaintiff over several months, during which time plaintiffs condition did not improve. In April 1989, an MRI of plaintiffs spine revealed a disc bulge at C5-6 and C6-7. However, Dr. Perdue concluded the MRI was unremarkable because the disc bulges were not within the area of plaintiffs pain and tenderness. There was still no change in plaintiffs condition by June 1989, so, at plaintiffs request, Dr. Perdue referred plaintiff to Dr. C. Babson Fresh, a neurosurgeon, for evaluation.
Dr. Fresh first saw plaintiff in July 1989, at which time plaintiff complained of pain in *741 his neck, right shoulder and right elbow. Dr. Fresh performed a strength test which showed less strength in plaintiffs right arm, and a sensory test which revealed general decreased sensation in the right arm. Dr. Fresh stated he would expect to see some atrophy of the muscles in plaintiffs right arm due to the complaints of pain in that area, but he noted no atrophy of these muscles. Dr. Fresh felt plaintiff had strained his neck and the junction area between his neck and thoracic spine.
Dr. Fresh saw plaintiff again in October 1989 and noted plaintiff still complained of pain in his neck and right arm. Because the tests that had been done through that time were normal and did not provide any explanation for plaintiffs pain, Dr. Fresh recommended plaintiff have a myelogram done.
Plaintiff sought no further medical treatment for six months. On April 4, 1990, he returned to Dr. Perdue for reevaluation. Plaintiffs reports of pain were the same. Dr. Perdue’s examination revealed no muscle spasm and no muscle atrophy. Dr. Perdue suggested that plaintiff return to some sort of productive activity; either light to moderate work, or, if he felt unable to do this, then sedentary work. He also recommended an MMPI test, as he felt there were some significant psychosomatic elements to plaintiffs symptomatology.
IsOn April 26, 1990, in a letter responding to a request for an analysis of plaintiffs job capabilities, Dr. Perdue stated that, from an objective standpoint, plaintiff was capable of performing the job of line erector and had no restrictions other than what a normal person would have. He also noted, however, that subjectively, plaintiff claims he is extremely limited in what he can do. Defendant terminated benefits on May 8, 1990 pursuant to this report.
Four months later, on September 6, 1990, plaintiff returned to Dr. Fresh claiming his symptoms were worse and he was ready to have the myelogram done. A myelogram and post-myelogram CT scan were scheduled and Dr. Fresh issued a temporary work restriction on October 25, 1990, stating plaintiff was unable to work. This temporary work restriction noted plaintiffs return visit with Dr. Fresh was scheduled for November 13, 1990. Pursuant to this restriction, defendant reinstated workers’ compensation benefits on October 25, 1990.
On November 13, 1990, Dr. Fresh reviewed the myelogram and CT scan and concluded that plaintiff had a disc herniation on the left side at C5-6. However, he noted there was no correlation between the herniation and plaintiffs symptoms, as the herniation was on the left and plaintiff was complaining of right arm pain. Dr. Fresh found no atrophy of the arm muscles, even though plaintiff claimed continuing symptoms which would have restricted the use of his right upper extremities for over twenty months. Dr. Fresh felt plaintiff initially had a muscu-loligamentous injury, but concluded there was nothing objective that would support any long-term disability. Dr. Fresh diagnosed chronic pain syndrome and recommended treatment at a pain clinic, which plaintiff refused.
Plaintiff continued to receive benefits until February 7, 1991, when, based on the lack of objective findings of disability by Dr. Fresh and Dr. Perdue, benefits were terminated. Plaintiff subsequently saw two neurologists. Dr. E.E. Robinson concluded that, although it was not the “usual or expected picture,” it was possible the herniated disc was causing plaintiff difficulty. The |4other neurologist, Dr. Thomas Perone, noted no objective findings that he could relate to plaintiffs accident.
Plaintiff also saw two orthopedists. Dr. Daniel Kingsley concluded plaintiff had a ruptured disc that required surgery and that he was, therefore, disabled. Dr. Clifton Shepherd concluded that plaintiff had reached maximum medical improvement and the only restriction he would possibly impose was a restriction on prolonged awkward positions of the neck.
On October 10, 1991, plaintiff filed a claim for benefits from May 8, 1990 through October 25, 1990, and February 7, 1991 through the present. After reviewing the evidence and testimony, the hearing officer concluded plaintiff had not carried his burden of proof to establish the existence of a work related *742 disability. Judgment dismissing plaintiffs claim was rendered March 29, 1993, and it is from this judgment that plaintiff appeals.
LAW
Plaintiff argues that, since the accident, he has been continuously disabled and unable to work.
The applicable law is that in effect at the time of plaintiffs injury. Bernard, v. O’Leary Bros. Signs, Inc., 606 So.2d 1331 (La.App. 3 Cir.1992). Thus, for temporary total disability benefits, plaintiff has the burden of proving by a preponderance of the evidence that a job-related accident resulted in disability. Hawthorne v. Dillard Dept. Stores, Inc., 618 So.2d 593 (La.App. 2 Cir. 1993). Plaintiff must prove that the injury has prevented him from engaging in any self-employment or gainful occupation, regardless of whether it was of the same type of employment in which he was previously engaged. Lewis v. Wal-Mart Stores, Inc., 525 So.2d 93 (La.App. 3 Cir.), writ denied, 525 So.2d 1047 (La.1988). In reviewing a hearing officer’s determination of disability, an appellate court may not set aside the hearing officer’s findings in the absence of manifest error. Zeigler v. Pleasant Manor Nursing Home, 600 So.2d 819 (La.App. 3 Cir.1992).
[sThe question of disability must be determined by reference to the totality of the evidence, including both lay and medical testimony. Id. The observations and opinions of treating physicians are given greater weight than those of physicians who examine a plaintiff for diagnosis only. Colomb v. Frito-Lay, Inc., 544 So.2d 710 (La.App. 3 Cir.1989). In this case, both of plaintiffs treating physicians found no objective signs of disability. Although Dr. Kingsley concluded plaintiff was disabled, he examined plaintiff only one time, over two years after the accident, and the hearing officer apparently did not find his opinion persuasive.
There have been numerous workers’ compensation cases involving plaintiffs, like the one in the ease sub judice, who have no objective medical findings to support their subjective complaints of pain. Where the hearing officer or trial judge found no disability, the appellate court almost invariably found no manifest error in this determination. See Green v. American Motorists Ins. Co., 539 So.2d 682 (La.App. 3 Cir.1989); Hawthorne, supra; DeFatta v. General Motors Corp., 605 So.2d 616 (La.App. 2 Cir. 1992); Britton v. Morton Thiokol, Inc., 604 So.2d 130 (La.App. 2 Cir.1992).
After a thorough review of the evidence, we cannot say the hearing officer was manifestly erroneous in finding plaintiff failed to prove a work related disability. Accordingly, we affirm the judgment dismissing plaintiffs claim for workers’ compensation benefits.
CONCLUSION
For the foregoing reasons, the judgment of the hearing officer denying plaintiffs claim for benefits is affirmed. Costs of this appeal are assessed to appellant.
AFFIRMED.